**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**CALIFORNIA STATE BOARD OF**
**EQUALIZATION,**          (
**Defendant-Appellant.**

No. 80–5391.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 8, 1982.

Submission Vacated Jan. 20, 1982.

Resubmitted June 10, 1982.

Decided Aug. 3, 1982.

---

Neal J. Gobar, Deputy Atty. Gen., San Diego, Cal., for defendant-appellant.

John J. McCarthy, Atty., Washington, D. C., argued, for plaintiff-appellee; Charles E. Stratton, M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Michael L. Paup, Jonathan S. Cohen, Washington, D. C., on brief.

Before CHAMBERS, KENNEDY, and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge.

The United States brought this action to recover sales and use taxes on leases of personal property executed by Defense Department contractors. The taxes were collected by the California State Board of Equalization between 1973 and 1976 from lessors who leased personalty to contractors of the United States; the lessors passed on the tax liability to the contractor-lessees. The contractors were reimbursed in turn by the Department of Defense for the tax payments under a contractual cost plus fixed fee arrangement.

The United States contends that the sales and use taxes could not constitutionally be imposed because the contractors in question were acting as agents of the United States in executing the leases involved, and as a result the legal incidence of the taxes fell upon the United States as their principal. The district court granted summary judgment to the United States. We must reverse on the authority of the recent decision of the United States Supreme Court in *United States v. New Mexico*, ——— U.S. ———, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982).

That case involved the constitutionality of the application of New Mexico's sales, use, and gross receipts taxes to private entities engaged in operating government-owned research and development facilities. The contractors were paid their costs plus a fixed fee under their management contracts with the Department of Energy. After reviewing its past cases and the general principles of federal immunity from state taxation, the Court stated that "absent Congressional action, . . . the States' power to tax can be denied only under 'the clearest constitutional mandate.'" *United States v. New Mexico, supra*, ——— U.S. at ———, 102 S.Ct. at 1384 (quoting *Michelin Tire Corp. v. Wages*, 423 U.S. 276, 293, 96 S.Ct. 535, 544, 46 L.Ed.2d 495 (1976)). The Court held that in determining whether the legal incidence, as opposed to the economic burden, of the tax falls on the United States, the key consideration is not whether the United States "shoulders the burden" of the levy, nor whether the contractor acts as an "agent" for the United States in the transaction, but whether "the levy falls on the United States itself, or on an agency or instrumentality so closely connected to the Government that the two cannot realistically be viewed as separate entities, at least insofar as the activity being taxed is concerned." *Id.* ——— U.S. at ———, 102 S.Ct. at 1382.

The government advances four grounds for distinguishing the contractual relationships in this case from those involved in *United States v. New Mexico*. First, the government has not "formally disclaimed" the intent to designate these contractors as procurement "agents." Second, the lessors are allegedly told that the United States is the only party with an independent interest in the leases. Third, the contractors are "in fact" designated as government procurement agents. Finally, the contractors do not execute the leases in their own names, but rather as "acting for" or "acting on behalf of" a governmental agency; title

passes directly to the United States, which "admits" its liability to the lessor for the rental.

These assertions amount to but a single contention that the contractors are acting as agents of the United States for the purpose of procuring goods. Even accepting the government's argument that the contractors are formally so designated, the sole and limited purpose of that designation is to allow the contractors to take advantage of GSA supply schedule sources in order to realize the favorable prices offered to the government by those sources.

Here the legal incidence of the tax falls on the contractor as lessee, not on the lessor. In *United States v. California State Board of Equalization*, 650 F.2d 1127, 1131–32 (9th Cir. 1981), *aff'd mem.*, —— U.S. ——, 102 S.Ct. 1744, 72 L.Ed.2d 157 (1982), involving a lease directly to the government rather than to a contractor, the issue was whether the legal incidence fell upon the lessor or the lessee. The United States as lessee there was held to bear the legal incidence since the statutory scheme "all but compell[ed]" the United States to bear the tax burden. *Id.* at 1132; *see Diamond National Corp. v. State Board of Equalization*, 425 U.S. 268, 96 S.Ct. 1530, 47 L.Ed.2d 780 (1976); *see also United States v. State Board of Equalization*, 536 F.2d 294 (9th Cir. 1976) (per curiam). The legal incidence in this case, as in *United States v. New Mexico*, fell on the contractor, since the California legislature indisputably intended that the contractor would pay the tax. Therefore, as in *United States v. New Mexico*, it is irrelevant that the parties by contract shifted the tax among themselves; "The Constitution . . . does not prohibit the state from enacting a taxing scheme whose effect is to increase prices paid by the United States." *United States v. California State Board of Equalization*, 650 F.2d at 1131. The contractors are neither governmental agencies nor private entities pursuing governmental functions. They are engaged in commerce for their own economic advantage. See the discussion of *United States v. Boyd*, 378 U.S. 39, 44, 84 S.Ct. 1518, 1521, 12 L.Ed.2d 713 (1964) in *United States v. New Mexico, supra*, —— U.S. at —— – ——, 102 S.Ct. at 1384.

In sum, the United States has established only that the contractors act as procurement agents of the United States in order to enjoy the favorable rates available to the government from GSA supply schedule sources. Those contractors are nevertheless private entities which have contracted with the United States government for their own commercial advantage. The legal incidence of these taxes does not fall on the United States.

Reversed.