**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**ANDERSON COUNTY, TENNESSEE, et al., Defendants-Appellees.**

No. 82–5281.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 26, 1982.

Decided April 20, 1983.

Rehearing Denied June 10, 1983.

John J. McCarthy (argued), Glenn L. Archer, Jr., Jonathan Cohen and Michael L. Paup, U.S. Dept. of Justice, Tax Div., Washington, D.C., John W. Gill, U.S. Atty., Jimmy Baxter, Asst. U.S. Atty., Knoxville, Tenn., for plaintiff-appellant.

Mike Lawson, Haynes and Associates, Goodlettsville, Tenn., for Anderson County.

William M. Leech, Jr., Atty. Gen. of Tenn., Jim Creecy and Charles L. Lewis (argued), Asst. Attys. Gen., Nashville, Tenn., for State Bd. of Equalization.

Before MARTIN and KRUPANSKY, Circuit Judges, and PRATT, District Judge.[*]

KRUPANSKY, Circuit Judge.

This is an action by the United States of America against Anderson County, Tennessee, and officers thereof, seeking a declaration that a tax imposed by Anderson County upon Union Carbide Corporation (Union Carbide), a government contractor, was in violation of Tennessee law and was unconstitutional and void as constituting a discriminatory tax upon the United States and its contractor. The district court, 547 F.Supp. 18, abstained citing to *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), as interpreted by this Circuit in *United States v. Ohio,* 614 F.2d 101 (6th Cir.1979), and dismissed the cause of action.

The United States owns in fee simple the Oak Ridge Reservation, consisting of 37,185 acres of land situated in Anderson and Roane Counties, Tennessee, whereupon are located large federally owned and operated nuclear production and research facilities principally devoted to development of nuclear energy and production of nuclear weapon components for national defense. The Y–12 Plant, located in Anderson County on the Oak Ridge Reservation, is managed for the United States by Union Carbide pursuant to Government Contract No. W–7405–ENG–26 (contract). In return for managing the operation and maintaining the Government owned facilities, Union Carbide receives an annual fixed fee plus costs; the fee is unrelated to the value of the real and personal property managed or to the amount of weapon components produced. Union Carbide performs no work as a private entrepreneur on behalf of itself or any other private entity at the Y–12 Plant. All obligations and costs of operating the Y–12 Plant, including costs of materials and supplies procured by Union Carbide, are liabilities of the United States. Union Carbide advances no funds nor does it commit any of its property to the management of the facility. Union Carbide is not liable for any loss, damage or destruction of government property at the Y–12 Plant absent willful misconduct, bad faith or failure to comply with written instructions. Union Carbide is not obligated to pay any rent, fee, charge, or other consideration in exchange for its presence at, and right of access to, the Y–12 Plant for the purpose of performing its duties under its management contract.

In March, 1980, Anderson County advised Union Carbide that an ad valorem tax would be assessed upon an alleged real property interest of Union Carbide in the federally owned Y–12 Plant facility. In July, 1980, the United States initiated an action in the United States District Court for the Eastern District of Tennessee challenging the tax assessment, whereupon the district court ordered the parties to pursue state administrative remedies and, upon exhaustion thereof, to reappear before the district court for appropriate relief if dissatisfied with the state agency decision.

A complaint was then filed by Union Carbide before the Anderson County Board of Equalization (County Board). However, the United States refused to submit to the jurisdiction of the state administrative agency to preserve its claim of sovereign immunity. In September, 1980, the County Board concluded that the imposed Tennessee tax was legal since no exemption had been procured by the Division of Property Assessments, State of Tennessee, as required by T.C.A. § 67–801.

The decision of the County Board was appealed by Union Carbide to the Assessment Appeals Committee (Appeals Committee). In a 4:3 decision the latter Committee concluded that the contractual relationship between Union Carbide and the United States did not create a property interest in Union Carbide which was subject to taxa-

[*] Honorable Philip Pratt, United States District Judge, Eastern District of Michigan, sitting by designation.

tion under the laws of Tennessee and the assessment was accordingly voided. The constitutionality of the tax was not addressed.

Anderson County filed a petition for review of the decision of the Appeals Committee to the State Board of Equalization (State Board). Before the State Board rendered its decision, the district court dismissed the pending federal action without prejudice, noting that neither party had pursued its claim before the Court during the intervening 12 months from the date of its Order compelling the parties to seek state administrative relief. Approximately six months thereafter, the State Board in a 4:3 decision reversed the decision of the Appeals Committee declaring the tax assessment valid. It was adjudged that (1) Union Carbide was the owner of a real property interest as defined by T.C.A. § 67–601(1) to which a real property tax attached pursuant to T.C.A. § 67–602(6), (2) Union Carbide was not exempt from taxation pursuant to T.C.A. § 67–501, which exempts "all property of the United States . . . used exclusively for public . . . purposes," and (3) Union Carbide assumed the status of an independent contractor and, consequently, the assessment was not an act of unconstitutional taxation against the United States.

Upon this pronouncement from the highest state agency, the United States reinstituted the instant action in the federal forum seeking a declaration that (1) the contract between Union Carbide and the United States neither conveyed nor created in Union Carbide any real property ownership and that the Board's interpretation of the contract was erroneous and (2) the attempted imposition of tax was unconstitutional because it constituted a discriminatory tax against the United States and was void since Union Carbide acquired no ownership interest at Y–12 as a result of its contract with the United States Government but only a privilege of access to the facility which was not taxable under the laws of Tennessee. Shortly thereafter, Union Carbide filed a petition to review the State Board's decision in the Davidson County Chancery Court. Within this procedural context, the district court exercised *Pullman* and *Younger* abstention and dismissed the federal action. This appeal ensued.

The Supreme Court has stated that judicially created doctrines of abstention, whereby the federal forum may decline or postpone exercise of jurisdiction, are "extraordinary and narrow exception[s] to the duty [of the federal forum] to adjudicate [those] controvers[ies] properly" asserted. *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). The "virtually unflagging obligation" of the federal forum to exercise its jurisdictional powers may be abdicated out of deference to parallel litigation in the state forum in only the most exceptional circumstances. *See: Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* —— U.S. ——, 103 S.Ct. 927, 935–39, 74 L.Ed.2d 765 (1983). The federal forum has, on numerous occasions, entertained, without discussing abstention, actions wherein the United States has challenged imposition of a state tax upon a federally owned facility or upon a federal contractor. *See e.g., United States v. New Mexico,* 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982) (citing cases); *United States v. California State Board of Equalization,* 683 F.2d 316 (9th Cir.1982). Doctrines of abstention have been expressly rejected in such actions. *United States v. Nevada Tax Commission,* 439 F.2d 435 (9th Cir.1971); *United States v. Bureau of Revenue of New Mexico,* 291 F.2d 677 (10th Cir.1961). However, this Circuit has recognized, in an action distinguishable from the case at bar, that abstention may be appropriate in instances wherein the United States challenges assessment of a state tax upon its contractor. *United States v. Ohio,* 614 F.2d 101 (6th Cir.1979).

■ Confronting the propriety of *Pullman* abstention in the action *sub judice,* it is noted that the doctrine applies

in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a

state court determination of pertinent state law.

*Colorado River, supra,* 424 U.S. at 814, 96 S.Ct. at 1244. *Accord: Hanna v. Toner,* 630 F.2d 442, 445 (6th Cir.1980). *Pullman* abstention may be appropriate to moot a federal issue in the presence of some unsettled question of state law or when there is a need to interpret an ambiguous state statute. In *United States v. Ohio, supra,* this Court applied *Pullman* abstention in an action wherein governmental agencies had executed contracts with various private corporations. These agreements required the corporations to purchase, on behalf of the United States, various items of personal property, title to which vested in the United States at the time of delivery to the contractors. The Tax Commission of Ohio levied sales and use tax assessments against the contractors, several of which challenged the tax before the Ohio Board of Tax Appeals. Shortly thereafter, and prior to any state administrative resolution, the United States initiated an action in district court seeking a declaration that the taxes were improper *under Ohio law, i.e.,* that Ohio had violated its own statutes by assessing the tax. Pertinently, the United States did not assert in its complaint that the assessments constituted unconstitutional taxation of the federal government. The district court ordered state proceedings stayed in aid of its federal jurisdiction and this Circuit reversed, observing that "the submerged question of the constitutionality of the state taxation was bound to surface in the course of [the federal] litigation," *id.* at 103, and adjudged that *Pullman* and *Younger* abstention were appropriate.

In *Ohio* the sole issue joined in the federal pleading challenged the statutory construction of Ohio taxing statutes. An interpretation of the relevant ambiguous legislative enactments by the state courts offered the opportunity of mooting any "submerged" and unplead constitutional claims.

Contrawise, in the case at bar, unlike *Pullman* and *Ohio,* the relevant sections of the Tennessee Code Annotated are clear in imposing an ad valorem tax on real property interests and need no judicial construction. *Compare: United States v. Nevada Tax Commission,* 439 F.2d 435 (9th Cir.1971) (abstention deemed inappropriate where the state taxing statute was facially unambiguous irrespective of fact that said statute had never been construed by state courts); *United States v. Bureau of Revenue of State of New Mexico,* 291 F.2d 677, 679 (10th Cir.1961) (abstention inappropriate where state taxing statute "is unambiguous and leaves no room for construction"). In *Ohio* this Circuit stated:

> We are in agreement with the recent ruling of the Second Circuit that a district court, confronted with a suit challenging state taxation, should not abstain from exercise of jurisdiction if (1) there are no unsettled questions of state law which affect federal claims; (2) present state proceedings would not be interrupted by exercise of federal jurisdiction; (3) and the most important questions of law presented by the suit are federal, not state, questions.

*Ohio, supra,* 614 F.2d at 105, citing *In re Levy,* 574 F.2d 128 (2d Cir.1978). In the case at bar, consistent with the principles of *Ohio,* "there are no unsettled questions of state law which affect federal claims." *Id.* Rather, the "unsettled question" is whether the contractual relationship between Union Carbide and the United States conveyed to Union Carbide *any* real property interest in the Y–12 Plant. A negative response to the inquiry vitiates the necessity of ascertaining the authority of the state of Tennessee to impose a tax upon Union Carbide. Further, interpretation of a contract wherein the United States is a party is a *federal* issue. *United States v. Allegheny County,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944).[1] Accordingly, abstention was inap-

---

1. The Court stated:

 The validity and construction of contracts through which the United States is exercising its constitutional functions, their conse-

quences on the rights and obligations of the parties, the titles or liens which they create or permit, all present questions of federal law

propriate for two reasons: (1) there was no unsettled state question and, (2) "the most important questions of law presented by the suit [were] federal, not state, questions." Moreover, in the event that the district court should adjudge that Union Carbide's contractual relationship with the United States resulted in a real property interest which is taxable under Tennessee statutes, then, in that event, the federal constitutional issues, predicated upon the Supremacy Clause, would be joined. These constitutional defenses are appropriate for disposition in the federal forum. In sum, since the threshold issue of contractual interpretation is federal, as are the ultimate constitutional challenges to the state taxation, and since the underlying state taxation statutes are not ambiguous, *Pullman* abstention is inappropriate.

 Confronting the propriety of *Younger* abstention in the action *sub judice,* it is noted that the doctrine facially applies where (1) there is an ongoing or pending state proceeding, (2) the proceeding is criminal and (3) no unusual circumstances exist which would counsel against abstention, such as prosecution under a flagrantly unconstitutional statute, bad faith prosecution or an inability to raise the constitutional challenge in the state proceeding. The second prong of the *Younger* three-tier test has been expanded to warrant abstention in noncriminal judicial proceedings but only when "important state interests are involved." *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982), citing *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979), *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 604–05, 95 S.Ct. 1200, 1208, 43 L.Ed.2d 482 (1975). *See also: Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *J.P. v. DeSanti,* 653 F.2d 1080, 1082 (6th Cir.1981). Assuming, without deciding, the existence of

an ongoing or pending state proceeding even though the United States is not a party to the state proceedings and that the first prong of *Younger* has been satisfied, the criteria of the second prong of the test has not been fulfilled. Tennessee's interest in administering its own tax laws without federal intervention may qualify as an important state interest when a tax is assessed against an entity *other* than the United States. *See: Great Lakes Dredge & Dock Co. v. Huffman,* 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943). Indeed, the Anti-Injunction Act, 28 U.S.C. § 1341 (1976),[2] implicitly recognizes this principle and preserves state fiscal integrity by precluding the federal forum from enjoining tax assessments where a state remedy exists. It is recognized that the Act "has its roots in equity practice," principles of federalism and was promulgated in recognition of the imperative need of state sovereigns to administer their own fiscal operations without interference. *See: Rosewell v. LaSalle National Bank,* 450 U.S. 503, 101 S.Ct. 1221, 1235, 67 L.Ed.2d 464 (1981). However, the Anti-Injunction Act does not restrict the *United States* from access to the federal forum when it seeks to assert its own interest or that of its instrumentalities. *Department of Employment v. United States,* 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966); *Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation,* 425 U.S. 463, 470, 96 S.Ct. 1634, 1640, 48 L.Ed.2d 96 (1976); *United States v. Lewisburg Area School District,* 539 F.2d 301 (3d Cir.1976); *United States v. Bureau of Revenue of New Mexico,* 291 F.2d 677 (10th Cir.1961). A state may not, consistent with the Supremacy Clause, impose a tax directly upon the United States. *United States v. New Mexico,* 455 U.S. 720, 102 S.Ct. 1373, 71 L.Ed.2d 580 (1982); *M'Culloch v. Maryland,* 4 Wheat. 316, 431, 4 L.Ed. 579 (1819). This immunity extends to private entities who "stand in the Government's

not controlled by the law of any state. (numerous citations omitted) 322 U.S. at 183, 64 S.Ct. at 913–14.

2. "The district courts shall not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law where a plain, speedy and efficient remedy may be had in the courts of such State."

shoes." *Id.* 455 at 735, 102 S.Ct. at 1383, citing *City of Detroit v. Murray Corp.,* 355 U.S. 489, 503, 78 S.Ct. 458, 491, 2 L.Ed.2d 441 (1958). Also,

> [i]t remains true, of course, that state taxes on contractors are constitutionally invalid if they discriminate against the Federal Government, or substantially interfere with its activities. *See United States v. County of Fresno,* 429 U.S. 452, 463 n. 11, 464, 97 S.Ct. 699, 705 n. 11, 705, 50 L.Ed.2d 683 (1977); *Moses Lake Homes, Inc. v. Grant County,* 365 U.S. 744, 81 S.Ct. 870, 6 L.Ed.2d 66 (1961); *City of Detroit v. Murray Corp.,* 355 U.S. 489, 495, 78 S.Ct. 458, 461, 2 L.Ed.2d 441 (1958).

*United States v. New Mexico, supra,* 455 U.S. at 735, note 11, 102 S.Ct. at 1383, note 11. In the case at bar the United States has challenged the tax assessment as violative of the Supremacy Clause. Tennessee's interest in obtaining a state forum to adjudicate, without federal intervention, the validity of a tax assessment against Union Carbide, a contractor of the United States, is at best concurrent with and at worst totally subservient to the coexisting interest of the United States to obtain a federal adjudication of the propriety and constitutionality of said tax. The principles of comity and federalism which underlie doctrines of abstention in general, and *Younger* abstention in particular, are absent in the case at bar.

As abstention is inappropriate, the judgment of the district court dismissing the cause of action is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.