**UNITED STATES of America**

v.

**ANDERSON COUNTY, TENNESSEE, et al.**

**Civ. No. 3–82–83.**

United States District Court, E.D. Tennessee, N.D.

Nov. 9, 1983.

John J. McCarthy, U.S. Dept. of Justice, Tax Div., Washington, D.C., Jimmie Baxter, Asst. U.S. Atty., Knoxville, Tenn., for plaintiff.

Mike Lawson, Goodlettsville, Tenn., for all defendants except Tenn.

William M. Leech, Jr., State Atty. Gen., Jim Creecy, Deputy Atty. Gen., Charles L. Lewis, Asst. Atty. Gen., Nashville, Tenn., for Tenn.

George John Keto, Alvord & Alvord, Washington, D.C., for Anderson County.

## MEMORANDUM

ROBERT L. TAYLOR, Chief Judge.

The United States brought this action seeking a declaration that a state property tax imposed upon a government contractor is invalid. The case is now before the Court on cross motions for summary judgment.

The United States owns in fee simple approximately 811 acres and 300 buildings and structures in Anderson County, Tennessee. This property is known as the Y-12 Plant which is a part of an integrated system of federally owned laboratories and plants operated by the United States Department of Energy [DOE] to develop and produce nuclear weapons for national defense. Union Carbide runs Y-12 for DOE pursuant to Government Contract No. W-7405-ENG-26 [Contract]. Defendants contend that the Contract gave Union Carbide a real property interest as defined by Tenn. Code Ann. § 67-601(1) to which a real property tax attached pursuant to Tenn.Code Ann. § 67-602.

Tennessee Code Annotated § 67-601(1) defines real property "to include lands, tenements, hereditaments, structures, improvements; moveable property assessable under § 67-612; or machinery and equipment affixed to realty (except as otherwise provided for herein) and all rights thereto and interests therein, equitable as well as legal." Section 67-602 provides:

The function of assessment shall be as follows, to wit:

. . . .

(6) All mineral interests and all other interests of whatsoever character, not defined as products of the soil, in real property, including the interest which the lessee may have in and to the improvements erected upon land where the fee, reversion, or remainder therein is exempt to the owner, and which said interest or interests is or are owned separate from the general freehold, shall be assessed to the owner thereof, separately from the other interests in such real estate, which other interests shall be assessed to the owner thereof, all of which shall be assessed as real property.

The Court understands these Tennessee statutes to mean that Tennessee intends to tax *any* interest in real property. *See United States v. Anderson County, Tennessee,* 705 F.2d 184, 187 (6th Cir.1983).

Although Tennessee law defines real property, whether the Contract conveyed any real property to Union Carbide is a question of federal law. 705 F.2d at 187, *citing United States v. Allegheny County,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1977). The questions before the Court are: 1) whether the Contract conveyed to Union Carbide any real property interest in the Y-12 facility, and if so, 2) whether the Supremacy Clause of the United States Constitution prohibits Tennessee from imposing a property tax on Union Carbide.

Pursuant to a series of continual contracts, Union Carbide has run Y-12 for the federal government since 1947. The last contract defining this relationship was scheduled to expire on September 30, 1983. Union Carbide did not renew the Contract

but the parties have extended the Contract to April 1, 1984.

The stated purpose of the Contract is for Union Carbide to manage and operate Y–12. For its services, Union Carbide receives an annual fixed fee plus costs. The fee is unrelated to the value of Y–12. The Contract does not expressly convey to Union Carbide a lease, easement, license, privilege, franchise or any property interest in Y–12. The Contract provides that title to all property in the care and custody or possession of Union Carbide in connection with the Contract will remain vested with the government. Union Carbide is required to reasonably care for all government property under its control at Y–12. The Contract calls for Union Carbide to maintain guard and fire-fighting forces at Y–12. Union Carbide, however, is not liable for loss or damage to government property unless such loss or damage is the result of willful misconduct, bad faith or failure to reasonably comply with DOE directives.

The cost of operating Y–12 is borne by the United States. Union Carbide uses none of its property or funds to operate Y–12. The Contract calls for the use of "advance funding" in which Union Carbide pays creditors from a government account. *See United States v. New Mexico,* 455 U.S. 720, 725–27, 102 S.Ct. 1373, 1377–78, 71 L.Ed.2d 580 (1982). DOE, however, has retained the right to make direct payments to creditors. Under the advanced funding procedure, title to property purchased by Union Carbide for the operation of Y–12 passes directly from the supplier to the government. *Id.*

Union Carbide performs only government work at Y–12. "Union Carbide performs no work as a private entrepreneur on behalf of itself or any other private entity at the Y–12 Plant." 705 F.2d at 185. With limited exception, all technical data produced at Y–12 becomes the property of the United States. Union Carbide may reserve the right to use any invention it develops at Y–12 for its own private use, however, the government obtains the patent rights to any invention developed at Y–12.

At the time this litigation began there were 7,109 Union Carbide employees and 90 government employees at Y–12. DOE retains the right to inspect Union Carbide's work at any time and any manner it deems appropriate.

The Contract also provides that DOE may terminate the Contract if Union Carbide defaults in performance or "whenever, but upon not less than six (6) months days [sic] prior written notice to [Union Carbide], for any reason DOE shall determine any such termination is for the best interest of the Government." Contract Art. VIII(a)(1) (the Court assumes that six *months* prior notice is required for termination absent default). Union Carbide may terminate the Contract upon one year's notice. Any termination of the Contract would be without prejudice to any claims that either party would have against the other.

■ A contract between a corporation and the United States government is to be construed and the rights of the parties are to be determined by the application of the same principles of law applicable to contracts between private individuals. *Reading Steel Casting Co. v. United States,* 268 U.S. 186, 188, 45 S.Ct. 469, 470, 69 L.Ed.2d 907 (1925). The principles of general contract law apply to government contracts. *Priebe & Sons v. United States,* 332 U.S. 407, 411, 68 S.Ct. 123, 125, 92 L.Ed. 32 (1947). Considered in whole and in part, the Court finds nothing ambiguous or confusing about the rights and obligations of this Contract. In such cases, the contract language itself reveals the intent of the parties, and rules of construction need not be considered. *See, e.g., Pavlik v. Consolidation Coal Co.,* 456 F.2d 378 (6th Cir. 1972). *See generally,* 3 Williston on Contracts § 609 (revised edition, 1936). In determining what interest Union Carbide may have in Y–12, however, the Court is not bound by the terminology used by the parties to the Contract. Union Carbide and the United States have a history of resist-

ing state taxes levied on Y–12. *See, Carson v. Roane-Anderson Co.*, 342 U.S. 232, 72 S.Ct. 257, 96 L.Ed. 257 (1952); *United States v. Boyd*, 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964). It would be clearly unfair to allow Union Carbide to avoid a tax if the United States granted Union Carbide a real property interest, but simply did not label it a real property interest.

A contractor with a similar government contract for the operation of the Rocky Flats Plant has been held not subject to a Colorado property tax. *United States v. Colorado*, 627 F.2d 217 (10th Cir.1980), *aff'd without opinion sub nom.*, 450 U.S. 901, 101 S.Ct. 1335, 67 L.Ed.2d 325 (1981). In that case, however, Colorado was attempting to tax the contractor for the full value of the property. The federal government clearly retained some real property interest in Rocky Flats. Accordingly, a tax on the full value of the property would be at least a partial tax on the United States. The Tenth Circuit concluded that the substance of the Colorado tax was not to tax the contractor's use of government property, "but to lay an ad valorem general property tax on property owned by the United States." *Id.* at 221. Although the court stated that the contractor was "merely going onto government property where it perform[ed] its management services," *Id.* at 220, the Tenth Circuit was not presented with the question of whether the contract conveyed a real property interest. Therefore, the *Colorado* decision does not resolve this case.

Defendants recognize that the United States retained a real property interest in Y–12. Accordingly, defendants claim they have not sought to tax Union Carbide for the full value of Y–12. Rather, defendants claim they have sought to segregate the real property interest retained by the United States from the interest conveyed to Union Carbide.

There is an action parallel to this case pending in the Tennessee state courts. Union Carbide has appealed a Chancery Court decision holding that Union Carbide owned a taxable property interest in Y–12. *Un-ion Carbide Corp. v. Alexander*, No. 82–431—III (Davidson County Ch. Feb. 2, 1983). The chancellor correctly determined that Union Carbide had the right to leave and enter and the right to use Y–12. Applying the "bundle of rights" theory of property ownership, the chancellor concluded that Union Carbide did own a property interest in Y–12. The chancellor did not explain, however, why Union Carbide's property interest in Y–12 was a real property interest.

This Court is in agreement with the chancellor when he stated that "[i]t is difficult to apply traditional concepts of property ownership which evolve from a medieval, feudal society to this post-World War II arrangement between the government and a contractor for the manufacture of nuclear weapons." *Id.* at 5. Because the Tennessee tax statutes maintain the distinction between real and personal property, however, this Court must maintain the distinction.

■ Although Union Carbide has the right to enter, leave and use Y–12, it does not have a leasehold interest in Y–12. Generally, during the existence of a lease, the tenant is the owner of the premises and entitled to exclusive possession. 51 C.J.S. *Landlord and Tenant*, § 202(6). Union Carbide does not have exclusive possession of Y–12. Nowhere in the Contract has DOE given up its right to leave and enter Y–12. Nor has DOE given up its right to use Y–12 for any purpose that does not conflict with Union Carbide's contractual obligations. DOE has retained the right to inspect the Y–12 operation whenever and however it deems appropriate. Although government employees at Y–12 are far outnumbered by Union Carbide employees, the right to inspect is significant. Moreover, because of the nature of nuclear weapons, it is not unreasonable to expect the government to greatly increase its presence during war, international crisis, or a time when sabotage is experienced or expected. The detailed nature of the contract indicates that DOE retains great control over Union Carbide's operation of Y–12. Union Car-

bide's management program must be approved by DOE and Union Carbide may not construct, alter or repair any physical structure at Y–12 without DOE permission. The contract does not purport to be a lease "and the control over the business of [Union Carbide] and rights of entry and inspection retained by the owner of the realty are so extensive as to negative any notion that a lease of the realty was intended or effected." *United States v. Taylor's Oak Ridge Corp.*, 89 F.Supp. 28, 30 (E.D.Tenn.1950).

Admittedly, defendants do not claim that Union Carbide has a leasehold in Y–12. Indeed, defendants never specify what real property interest Union Carbide may have in Y–12. The Court is convinced that Union Carbide's interest is a mere license. "A 'license,' with respect to real estate, is an authority to do a particular act or series of acts on another's land without possessing any estate therein. It is not assignable, and is generally revocable at the will of the licensor." *Barksdale v. Marcum*, 7 Tenn. App. 697, 709, *cert. denied*, (Tenn.1928) (citation omitted). The Contract in this case provides that "[n]either this contract nor any interest therein nor claim thereunder shall be assigned or transferred by [Union Carbide], except as expressly authorized in writing by DOE." Contract at Art. XXI. Additionally, Union Carbide's right to use Y–12 is revocable at the will of DOE. Although DOE is required to give six months notice before termination of the Contract, a period of notice before revocation is not inconsistent with a license in real property. *See United States v. Hodge*, 89 F.Supp. 25, 26 (E.D.Tenn.1949).

▇ A license creates no estate in land and generally is not considered an interest in land. 53 C.J.S. Licenses § 79 (1948); 25 Am.Jur. Easements and Licenses § 123 (1966). *But see*, Restatement of Property § 512 & Comment c (1944). The Court has no reason to believe that Tenn.Code Ann. § 67–601(1) was designed to tax anything other than that which is traditionally defined as an interest in real property. The Court, therefore, concludes that within the meaning of Tennessee's real property

tax, Union Carbide has no real property interest in Y–12.

Because the Court concludes that Union Carbide has no real property interest in Y–12, it is not necessary to determine whether the Supremacy Clause of the United States prohibits Tennessee from imposing a property tax on Union Carbide. The Court notes, however, that defendants could tax Union Carbide's use of the Y–12 real property. *United States v. County of Fresno*, 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). The Court has no reservations concerning a local tax upon Union Carbide. The Court simply does not believe that defendants can tax Union Carbide by way of Tennessee's real property tax since, under Tennessee law, Union Carbide's interest in Y–12 is not a real property interest.

It is therefore ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, granted. It is further ORDERED that defendant's motion for summary judgment be, and the same hereby is, denied.

Order Accordingly.