**UNION CARBIDE CORPORATION,**
Plaintiff-Appellee,

v.

**Lamar ALEXANDER, Gentry Crowell, William C. Koch, Jr., William Snodgrass, Harlan Matthews, Claude Ramsey, Martha Olsen, and John E. Sloan, Jr., each of whom is sued in his official capacity as a Member of the Board of Equalization of the State of Tennessee; Board of Equalization of the State of Tennessee, and Anderson County, Tennessee, Defendants-Appellants.**

Supreme Court of Tennessee,
at Nashville.

Nov. 5, 1984.

W.J. Michael Cody, Atty. Gen., Jim G. Creecy, Deputy Atty. Gen., Charles L. Lewis, Asst. Atty. Gen., Nashville, Mike Lawson, Goodlettsville, George Keto, Washington, D.C., for defendants-appellants.

G. Wilson Horde, Oak Ridge, Jackson C. Kramer, Wayne R. Kramer, Erma G. Greenwood, David L. Oakley, Jr., Kramer,

Johnson, Rayson, McVeigh & Leake, Knoxville, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

We granted Defendants' Rule 11 application to consider the taxability, under Tennessee's real property taxation statutes, T.C.A. § 67-5-501 et seq., of property owned by the United States in Anderson County, Tennessee. Defendants seek to tax a private corporation that manages and operates the Y–12 Plant under a contract with the United States. The specific issue in this case is whether Union Carbide Corporation owns an interest in the real property at the Y–12 Plant separate from the ownership interest of the United States. It is undisputed that the fee interest of the United States is exempt from real property taxation.

The United States, through the Department of Energy (hereinafter DOE) owns 37,185 acres of land in Anderson and Roane Counties, on which government-owned production and research facilities are located. The property was acquired in 1942 and the facilities have been performing functions relating to the development of nuclear energy and the production of nuclear weapons components for the national defense. The Y–12 Plant is located on approximately 805 acres in Anderson County and consists of 271 buildings and structures, all of which are owned in fee simple by the United States.

In 1946 Congress authorized the Atomic Energy Commission (the predecessor of DOE) to contract with private and public entities for the research and development of nuclear processes, utilizing the government's own facilities. The contract pursuant to which Union Carbide has operated the Y–12 Plant is a "Management Contract" which authorizes Plaintiff to manage, operate and maintain the facility in accordance with the directions of the Department of Energy. Union Carbide procures materials, supplies and equipment, although DOE retains the right to furnish any of these items. Payment for such purchases is made by Carbide from funds provided by the government, and title passes directly from the vendor to the government.

Union Carbide performs all the work under the contract with its own employees, which numbered approximately 7,000 at the time of this litigation. Union Carbide has no capital investment in the Y–12 Plant. The contract costs include all expenditures under the contract, including the salaries of Carbide employees. In fiscal year 1980, the allowable costs totaled $272,642,000. In addition to the allowable costs under the contract, Carbide receives a negotiated fee for operating, managing and maintaining three industrial facilities, one of which is the Y–12 Plant. DOE estimates that Carbide received $1.8 million for its work at Y–12 in 1980. DOE can terminate the contract for any reason upon six months notice. The fee is unrelated to the value of the real or personal property managed or to the amount of weapon components produced. Union Carbide performs no work as a private entrepreneur on behalf of itself or any other private entity at the Y–12 Plant. Union Carbide is not obligated to pay any rent, fee or other consideration in exchange for its presence at, and right of access to, the Y–12 Plant for the purpose of performing its duties under its management contract.

The contractual relationship is reviewed periodically in accordance with applicable agency regulations. Each review has resulted in an extension of the contract. Effective April 1, 1984, Union Carbide decided to sever its contractual relationship with DOE and was replaced by the Martin Marietta Corporation as management contractor.

After Anderson County levied the assessment against Union Carbide, Carbide sought review before the Assessment Appeals Commission. In a unanimous decision, the Commission found that "Carbide does not have a *separate* interest as required by the statute. Accordingly, we can find no interest of Carbide in the plant

which rises to the dignity of a taxable interest for ad valorem property tax purposes." The Commission ordered the assessment be stricken in its entirety.

Anderson County appealed this ruling to the State Board of Equalization. The State Board, in a 4–3 decision, reversed the decision of the Assessment Appeals Commission and found that Carbide was the owner of real property as defined by T.C.A. § 67–601(1) [now 67–5–501(9)] and fixed the assessment at $325,000,000.00.

Union Carbide sought review of the Board's ruling in the Chancery Court for Davidson County, pursuant to T.C.A. § 4–5–322. The Chancellor affirmed the decision of the Board of Equalization and found that Carbide enjoyed two significant rights in the Y–12 Plant—the right to use it and the right to enter or leave it. The Chancellor stated that "Union Carbide Corporation pursuant to contract with the United States does possess a separate property interest under Tennessee law in the Y–12 Plant and ... this interest is subject to property taxation in Tennessee ...."

While this litigation was pending in Chancery Court, the United States sought a declaration in federal court that the real property tax imposed upon Carbide was invalid. Union Carbide was not a party to the suit. The District Court originally abstained, pending resolution of the suit in Chancery Court, but that decision was reversed by the United States Court of Appeals for the Sixth Circuit and the case was remanded to the District Court. *United States v. Anderson County, Tennessee,* 547 F.Supp. 18 (E.D.Tenn.1982), *rev'd,* 705 F.2d 184 (6th Cir.1982). On remand, Judge Taylor concluded that Union Carbide's interest in the Y–12 Plant was a "mere license" and was not taxable under Tennessee's real property taxing statutes. 575 F.Supp. 574 (E.D.Tenn.1983).

The Tennessee Court of Appeals concluded that it was bound by the district court's finding that the contract granted a license to Union Carbide, since the interpretation of a contract to which the United States is a party is a federal question, citing *United States v. Allegheny County,* 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944). However, the Court of Appeals recognized that it was not bound by the District Court's finding that the interest of Union Carbide was not taxable, since state courts of Tennessee are the interpreters of Tennessee statutes. Nevertheless, the Court of Appeals did agree with the District Court that the interest was not taxable. Speaking for the Court, Judge Lewis stated that "we are unable to find any instance in which a property tax has been imposed unless the entity being taxed had some incident of ownership traditionally recognized as valid under the law. The mere use by Carbide of the real property for purposes of performing the contract does not amount to an incident of ownership." The Court of Appeals reversed the decisions of the Chancellor and the State Board of Equalization and affirmed the decision of the Assessment Appeals Commission that the interest of Carbide was not taxable.

Defendants argue that Union Carbide has a real property interest in the Y–12 Plant that is separate and distinct from the fee ownership of the United States. They maintain that Carbide has a possessory interest in Y–12 arising from its possession, use, control and enjoyment of real property for purposes of performing its contractual obligations with the United States. Defendants concede that their whole theory turns on the notion of the "bundle of rights." In a property assessment manual (International Association of Assessing Officers, *Property Assessment Valuation* (1977)), it is said that there are six basic rights associated with the ownership of property: (1) the right to use; (2) the right to sell; (3) the right to lease or rent; (4) the right to enter or leave; (5) the right to give away; (6) the right to refuse to do any of these.

▪ The Chancellor found that Carbide had the right to use and the right to enter and leave. It is not disputed that Carbide cannot sell, lease or give away the Y–12 Plant. We do not believe that the right to use and the right to enter and leave are

sufficient to allow Anderson County to claim that Carbide has a real property interest in the Y–12 Plant. As the Court of Appeals pointed out, the right to alienate is an important element of ownership. *See* 63 Am.Jur.2d *Property* § 47 (1972), at 331. Carbide has no interest under the contract that it can sell, lease, or otherwise transfer. The mere use by Carbide of the real property for purposes of performing the contract does not amount to an incident of ownership.

Anderson County argues that the Court of Appeals erred when it concluded that it was bound by the District Court's finding that Carbide's interest was a mere license. Defendants argue that the Court of Appeals should have reviewed the contract and reached its own conclusion. We do not believe this issue matters in this case. Whether or not Carbide has a taxable interest is not dependent on the common law label that we attach to this interest. We believe the Court of Appeals was correct in determining that Carbide had the right to use and the right to enter and leave the property. It is unnecessary that these rights be translated into a common law label.

Defendants also argue that Carbide is escaping taxation and that this is against public policy. Defendants contend that because Carbide's employees work in a facility exempt from the local property tax, their share of the burdens are transferred to the local taxpayers who do pay local property taxes. Defendants fail to recognize that the federal government was aware of this problem and that Congress passed legislation to alleviate this burden. Two specific statutory provisions address this imbalance: Section 168 of the Atomic Energy Act of 1954, codified at 42 U.S.C. § 2208 (Payments in Lieu of Taxes), and Section 91 of the Atomic Energy Community Act of 1955, codified at 42 U.S.C. § 2391 (Basis of Assistance to Cities and Other State and Local Entities). Section 168 of the Atomic Energy Act of 1954 is especially illustrative:

In order to render financial assistance to those states and localities in which the activities of the Atomic Energy Commission [now the Department of Energy] are carried on, and in which the Commission has acquired property previously subject to State and local taxation, the Commission is authorized to make payments to state and local governments in lieu of *property taxes.*

42 U.S.C. § 2208 (emphasis added).

During the time that Union Carbide has contracted with the United States in Anderson County, the County has received $3,599,401 in Financial Assistance Payments and Payments in Lieu of Taxes. If Anderson County feels that these payments are inadequate, the County's remedy rests with the Secretary of the Department of Energy.

■ Finally, it is not disputed by Carbide that the Tennessee General Assembly could tax the interests of Union Carbide if it so desired. Other states like California and Michigan have possessory interest and use taxes that could conceivably reach government contractors like Union Carbide. *See United States v. County of Fresno,* 50 Cal.App.3d 633, 123 Cal.Rptr. 548 (1975), *aff'd,* 429 U.S. 452, 975 S.Ct. 699, 50 L.Ed.2d 683 (1977), and *City of Detroit v. The Murray Corp.,* 355 U.S. 489, 78 S.Ct. 486, 2 L.Ed.2d 441 (1958). These cases recognize the distinction between "property" taxes and "privilege" taxes. Justice Harlan has pointed out that

"a state may not constitutionally tax property owned by the Federal Government, even though the property is in private hands and the tax is to be collected from a private taxpayer, ... but it may tax activities of private persons, even though these activities involve the use of government property and the value or amount of such property becomes the partial or exclusive basis for the measurement of the tax."

*City of Detroit v. The Murray Corp.,* 355 U.S. 489, 505–506, 78 S.Ct. 486, 492–493, 2 L.Ed.2d 441, 466–467 (1958) (Harlan, J., concurring) (citations omitted).

Defendants maintain that Tennessee's ad valorem property tax statutes, T.C.A. § 67–5–501 et seq., place a tax on possessory interests in real estate like those enjoyed by Union Carbide. We cannot agree. It is fundamental in this jurisdiction that statutes levying taxes or duties on citizens will not be extended by implication beyond the clear import of the language used, nor will their operation be enlarged so as to embrace matters not specifically named or pointed out. *Chero-Cola Bottling Co. v. McDaniel,* 145 Tenn. 615, 237 S.W. 1101 (1921); *H.D. Watts Co. v. Hauk,* 144 Tenn. 215, 231 S.W. 903 (1923); *Chattanooga Plow Co. v. Hays,* 125 Tenn. 148, 140 S.W. 1068 (1911). Doubts as to the application of tax statutes will be resolved in favor of the citizen and tax statutes will be construed most strongly against the state. *H.D. Watts Co. v. Hauk, supra; State v. Louisville & Nashville R. Co.,* 139 Tenn. 406, 201 S.W. 738 (1918).

A tax burden such as that sought to be imposed on Union Carbide is a matter for the legislature and not this Court. However, we do not believe that the legislature contemplated taxing Carbide's right to use and right to enter and leave the Y–12 facility. Clearly, the Legislature could tax these rights by way of a privilege or use tax. *See United States v. Boyd,* 211 Tenn. 139, 363 S.W.2d 193 (1962), *aff'd,* 378 U.S. 39, 84 S.Ct. 1518, 12 L.Ed.2d 713 (1964). The Legislature could also tax mere possessory interests as California has done. Title 18 Cal.Adm.Code § 2(b) (1971) and Section 107 of the California Revenue and Taxation Code (1970) place a tax on "a possessory interest in nontaxable publicly owned real property...." This scheme was judicially approved in *United States v. County of Fresno,* 50 Cal.App.3d 633, 123 Cal.Rptr. 548 (1975), *aff'd,* 429 U.S. 452, 97 S.Ct. 699, 50 L.Ed.2d 683 (1977). Tennessee's Ad Valorem Tax is *not* comparable to the California scheme. A similar tax has been proposed but has never been adopted. House Bill No. 73 (S.B. 240) was introduced in 1977 and reintroduced in 1979 as House Bill No. 784 (S.B. 1161) but was not enacted.

The bill sought to place a tax on the use of real or personal property that was otherwise exempt from local ad valorem taxation, whether that use was pursuant to lease, contract, license or otherwise. The language of the bill, especially sections 2 and 4, indicated that it was intended to apply to the DOE facilities in Roane and Anderson Counties. We consider the rejection of this bill as evidence of a legislative intent to not tax Carbide's interest in the Y–12 Plant in Anderson County, Tennessee. Without some clear indication of legislative intent to the contrary, we are unable to say Carbide has a taxable interest in the Y–12 Plant under T.C.A. § 67–5–501 et seq.

Because we are of the opinion that the Plaintiff has no property interest that is subject to taxation under the ad valorem property tax, we need not decide the questions of immunity and valuation raised by the respective parties. The judgment of the Court of Appeals is affirmed. Costs of this appeal are taxed to the Defendants and the cause is remanded to the Chancery Court for further proceedings consistent with this opinion.

COOPER, C.J., and FONES, BROCK and HARBISON, JJ., concur.