812 F.2d 1409
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
HAWKINS COUNTY, TENNESSEE, et al., Defendants-Appellants.
 No. 85-5533.
 United States Court of Appeals, Sixth Circuit.
 Jan. 8, 1987.
 
 Before KEITH, NELSON and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Hawkins County, Tennessee, appeals a summary judgment order in which the district court enjoined the county from imposing a real property tax on an alleged leasehold interest of a private corporation that operates a federally owned industrial facility under contract with the United States. We shall affirm the judgment of the district court.
 
 
 2
 * The United States is the fee owner of the Holston Army Ammunition Plant, a facility located almost entirely in Hawkins County, Tennessee. The plant is operated by the Holston Defense Corporation. Between January 1, 1978, and December 31, 1982, Holston operated the plant under Government Contract No. DAAA09-78-C-3000. Since January 1, 1983, the plant has been operated under another contract, the terms of which are virtually identical to those of the 1978 agreement. Hawkins County imposed an ad valorem real property tax on what it asserts is Holston's "leasehold interest" in the facility. The United States denies that Holston is a lessee.
 
 
 3
 A similar dispute made its way through the federal and Tennessee court systems several years ago. That series of cases involved Union Carbide Corporation's operation of a government-owned facility at Oak Ridge. Anderson County, Tennessee, sought to levy a real property tax on Union Carbide's "interest" in the property, just as Hawkins County is trying to tax Holston's "interest" here. Union Carbide sought relief through the state tax appeal process, and the United States brought a declaratory judgment action in federal court. In United States v. Anderson County, Tennessee, 547 F.Supp. 18 (E.D.Tenn.1982), the district court concluded that it should abstain from deciding the case pending the outcome of the state proceeding. We reversed, holding the abstention doctrine inapplicable. United States v. Anderson County, Tennessee, 705 F.2d 184 (6th Cir.1983).
 
 
 4
 On remand, the district court held in favor of the United States, concluding that the contract between Union Carbide and the Department of Energy created merely a license and not a leasehold interest. United States v. Anderson County, Tennessee, 575 F.Supp. 574, 577-78 (E.D.Tenn.1983) (hereinafter cited as Anderson County III ).
 
 
 5
 Meanwhile, Union Carbide's state court litigation was proceeding apace. First, the Assessment Appeals Commission found that Union Carbide did not have a real property interest. The Commission was reversed by the State Board of Equalization. The Chancery Court for Davidson County affirmed the Board of Equalization. The Tennessee Court of Appeals then reversed the Chancery Court and the Board of Equalization. Although the Tennessee Court of Appeals believed that the intervening Anderson County III decision was dispositive of the question whether Union Carbide held a mere license as a matter of federal contract law, the court did not consider itself bound by the Anderson County III interpretation of state law. Nonetheless, it agreed with the federal district court that Tennessee law would not subject Union Carbide to tax.
 
 
 6
 The culmination of the state proceedings was the decision of the Tennessee Supreme Court in Union Carbide Corp. v. Alexander, 679 S.W.2d 938 (Tenn.1984), which affirmed the Tennessee Court of Appeals:
 
 
 7
 "Defendants argue that Union Carbide has a real property interest in the Y-12 Plant that is separate and distinct from the fee ownership of the United States. They maintain that Carbide has a possessory interest in Y-12 arising from its possession, use, control and enjoyment of real property for purposes of performing its contractual obligations with the United States. Defendants concede that their whole theory turns on the notion of the 'bundle of rights.' In a property assessment manual (International Association of Assessing Officers, Property Assessment Valuation (1977)), it is said that there are six basic rights associated with the ownership of property: (1) the right to use; (2) the right to sell; (3) the right to lease or rent; (4) the right to enter or leave; (5) the right to give away; (6) the right to refuse to do any of these.
 
 
 8
 "The Chancellor found that Carbide had the right to use and the right to enter and leave. It is not disputed that Carbide cannot sell, lease or give away the Y-12 Plant. We do not believe that the right to use and the right to enter and leave are sufficient to allow Anderson County to claim that Carbide has a real property interest in the Y-12 Plant. As the Court of Appeals pointed out, the right to alienate is an important element of ownership. See 63 Am.Jur.2d Property Sec. 47 (1972), at 331. Carbide has no interest under the contract that it can sell, lease, or otherwise transfer. The mere use by Carbide of the real property for purposes of performing the contract does not amount to an incident of ownership." Union Carbide Corp. v. Alexander, 679 S.W.2d at 940-41.
 
 
 9
 The Tennessee Supreme Court thus concluded that the Tennessee Legislature did not contemplate "taxing Carbide's right to use and right to enter and leave the Y-12 facility." Id. at 942.
 
 
 10
 After the Tennessee Supreme Court decision, Anderson County III was heard on appeal. United States v. Anderson County, Tennessee, 761 F.2d 1169 (6th Cir.1985) (hereinafter cited as Anderson County IV ). Based on the Tennessee Supreme Court decision, this court affirmed the result reached in Anderson County III, holding that Union Carbide had no taxable real property interest in the Y-12 facility as a matter of state law. Id. at 1175.
 
 
 11
 Now we must decide whether the case at bar is significantly different from Anderson County IV. Hawkins County tries to distinguish this case from that one in three ways. First, Hawkins County calls the Union Carbide contract a "management contract" and calls the Holston contract a "procurement contract." The difference in nomenclature does not signify a difference in function, however, because Union Carbide was engaged in "the production of nuclear weapons components for the national defense." Union Carbide Corp. v. Alexander, 679 S.W.2d 938, 939, supra. Regardless of whether Holston is managing or producing, moreover, no provision in the Holston contract grants the company more than a right to use and a right to enter and leave. There is certainly no right to alienate the property. Analyzing the Holston contract under the holding of the Tennessee Supreme Court in Union Carbide Corp. v. Alexander, the conclusion must be the same: Holston does not have a real property interest taxable by Hawkins County under Tennessee state law.
 
 
 12
 The second and third distinctions asserted by Hawkins County also fail. Union Carbide used government information to operate the Y-12 facility, says Hawkins County, but Holston uses information supplied by its parent corporation, Eastman-Kodak; and Union Carbide used government funds and credit to operate the Y-12 facility, but Holston uses its own funds and credit. Once again, we fail to see what this has to do with our analysis under Union Carbide v. Alexander and Anderson County IV. The technology one uses in production or the bank account on which one draws checks cannot turn a license into a lease under the law of Tennessee. Hawkins County has failed to distinguish this case from the Anderson County litigation.
 
 II
 
 13
 Hawkins County also claims it had insufficient time in which to conduct discovery. Hawkins County served interrogatories on the United States on May 31, 1984, and says that "[T]he United States delayed for a period of five months before responding to Hawkins Count's interrogatories [on October 19, 1984] and immediately filed its motion for summary judgment [on November 2, 1984], effectively cutting off the County's right to continue discovery." But nowhere does it appear that Hawkins County's right to continue discovery was, in fact, cut off by the filing of the summary judgment motion. A pre-trial order issued on November 6, 1984 (four days after the filing of the motion for summary judgment) gave the parties until March 1, 1985, to complete discovery. The district judge issued an order on November 7, 1984, requiring Hawkins County to respond to the summary judgment motion by December 3, 1984, but this order did not, by its terms, cut off Hawkins County's right to discovery, and the judge obviously had discretion to allow additional time if he thought circumstances warranted it.
 
 
 14
 Hawkins County has failed to show that it was prejudiced by the delay of the United States in answering the interrogatories. On November 15, 1984, when Hawkins County filed exceptions to the November 6 pre-trial order, it gave no indication that it was having problems with the discovery deadline, whether because of the government's delay or otherwise. A hearing on the summary judgment motion was held on March 13, 1985, and once again Hawkins County gave no indication that it was having difficulties because of a premature cessation of discovery; and had Hawkins County discovered new information of any relevance, there is no reason to believe that the district court would have been unwilling to take it into account.
 
 
 15
 Although the United States should have answered the interrogatories within thirty days, Fed.R.Civ.P. 33(a), Hawkins County had every right to move to compel under Fed.R.Civ.P. 37. Hawkins County's real problem seems to have been that after the Union Carbide Corp. v. Alexander decision on November 5, 1984, nothing that it could discover would be of any use to it.
 
 III
 
 16
 Finally, Hawkins County asserts that the United States inadequately supported its motion for summary judgment with affidavits containing "only conclusionary opinions." We do not agree. In their affidavits, Lt. Col. Willis and Plant Manager Knowles describe the relationship between Holston and the United States on the basis of their personal knowledge. Moreover, these affidavits were not the only items before the district court; the written facilities contract was also in the record, and it obviously provided the best evidence of the nature of Holston's interest.
 
 
 17
 The judgment of the district court is AFFIRMED.