BLUE CROSS AND BLUE SHIELD OF MICHIGAN, Plaintiff-Appellant,

v.

Nancy A. BAERWALDT, Commissioner of Insurance, State of Michigan, Defendant-Appellee.

No. 83–1053.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 11, 1983.

Decided Feb. 3, 1984.

David VanderHaagen, argued, Foster, Swift, Collins & Coey, Theodore W. Swift, Lansing, Mich., for plaintiff-appellant.

Frank J. Kelley, Atty. Gen. of Mich., Harry G. Iwasko, Asst. Atty. Gen., argued, Lansing, Mich., for defendant-appellee.

Before KEITH and MERRITT, Circuit Judges, and WEICK, Senior Circuit Judge.

MERRITT, Circuit Judge.

While the Michigan Commissioner of Insurance ("Commissioner") was considering a rate request filed by Blue Cross and Blue Shield of Michigan, Blue Cross caused advertisements to be printed in newspapers throughout Michigan urging the Commissioner to reach a certain result in the rate case. The Commissioner, prompted by other parties to the rate case, entered an order prohibiting Blue Cross from further advertising while the rate request was pending. Moreover, the Commissioner announced that, no matter how she decided the rate case, she would deduct the cost of the already published advertisements from the final rate approved.

Blue Cross filed suit in federal district court under 42 U.S.C. § 1983 to enjoin the Commissioner from punishing Blue Cross for any past or future newspaper advertisements or other communication with its subscribers or the public. The issue before us is whether the District Court erred in dismissing the section 1983 complaint.

I.

Blue Cross is a non-profit hospital and medical service insurer regulated by the Michigan Insurance Bureau. In late 1981 Blue Cross filed with the Commissioner of Insurance a request for increased rates for its individual lines of insurance coverage. In the rate proceeding, Blue Cross argued that individual subscribers should not be subsidized by group subscribers.

Pursuant to Michigan law, the matter was assigned to an administrative law judge who was to conduct a hearing and file with the Commissioner a proposal for decision. While the matter was pending before the administrative law judge, officers of Blue Cross addressed letters to the Commissioner advising her of the adverse consequences to Blue Cross if the subsidy was approved. By an order dated June 17, 1982, the Commissioner directed Blue Cross to "refrain from any and all ex parte communication and contact with the Commissioner or the administrative law judges on any issue involved in the main rate hearing or interim rate evidentiary hearing." Joint App. at 42. Moreover, the Commissioner ordered Blue Cross counsel to "consult with their client[ ] and explain the possible consequences of violating this Order." *Id.*

The Commissioner based her order on her interpretation of section 82 of the Michigan Administrative Procedures Act, Mich.Comp. Laws § 24.282, which governs rate requests filed by Blue Cross, and which provides that "a member or employee of an agency assigned to make a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except on notice and opportunity for all parties to participate."

On September 2, 1982, the administrative law judge issued the proposal for decision, which recommended approval of the subsidy. A few weeks later, while the proposal for decision was pending before the Commissioner for her final action, Blue Cross caused to be printed in newspapers throughout Michigan advertisements which contained the following message:

"WHY SHOULD BLUE CROSS AND BLUE SHIELD BE THE ONLY ONE FORCED TO SELL COVERAGE AT A LOSS?

Blue Cross and Blue Shield of Michigan asks the state Insurance Commissioner to reject recommendations by a hearing officer that:

—Orders Blue Cross and Blue Shield to sell its individual coverages at a loss.

—Forces group customers to pay at least $20 million-a-year subsidy to cover such losses.

—Favors some 200 giant out-of-state commercial insurers and discriminates against Blue Cross and Blue Shield, a Michigan corporation.

The recommendations defy good sense. Read below what two Michigan editors said about it."

The advertisement then reprinted two editorials which had previously appeared in Michigan newspapers and which were critical of the proposed subsidy.

These advertisements prompted "requests for sanction" to be filed by other parties to the rate case. These "requests for sanction" were followed by an opinion and order by the Commissioner which announced that "[t]he newspaper advertisement not only violates Section 82 of the [Michigan Administrative Procedures Act] and the June 17 Order but by its very nature constitutes waste of Blue Cross's resources. An illegal act such as this ex parte communication to unfairly influence the Commissioner's Final Opinion and Order is not an appropriate use of its funds." Joint App. at 18. Pursuant to this determination, the Commissioner announced that the "cost of the illegal advertisement will be deducted from the rates which are established by the Final Opinion and Order in this case." Joint App. at 20. In addition, the Commissioner repeated her order that Blue Cross refrain from "any and all ex parte communication and contact either directly or indirectly with the Commissioner." *Id.* This order, viewed in light of the simultaneous determination by the Commissioner that the published advertisement constituted "ex parte communication," clearly prohibited Blue Cross from further advertising on the merits of the rate case while the matter was pending before the Commissioner.

Upon entry of this order, Blue Cross filed suit under section 1983 to enjoin the Commissioner from punishing Blue Cross for its advertisements and to enjoin the Commissioner from prohibiting the publication of similar advertisements in the future. In an unpublished opinion, the district court concluded that the advertisements at issue were not protected by the first amendment as incorporated into the fourteenth amendment. *Blue Cross and Blue Shield of Michigan v. Baerwaldt,* No. G 82 819 CA (W.D.Mich. Nov. 3, 1982). The complaint was dismissed.

While this appeal was pending, it appears that the Commissioner entered her final opinion and order in the rate case and, true to her word, the cost of the advertisements, approximately $26,000, was deducted from the approved rate. Pursuant to Mich.Comp. Laws §§ 24.301 et seq., Blue Cross has appealed various parts of the Commissioner's final order to the Michigan courts. Those further state proceedings are not part of the record on this appeal.

We do not reach the first amendment issues in deciding that the district court's dismissal of Blue Cross's complaint was correct. Rather, we determine that part of Blue Cross's claim is moot and the remainder is the subject of an ongoing state proceeding, which requires that we abstain. Accordingly, we affirm, albeit on grounds different from those relied on by the District Court.

## II.

Blue Cross complains of two acts by the Commissioner: (1) her prohibition of advertisements and other acts of communication while the rate request was pending and (2) her deduction of the cost of past advertisements from the rate granted. At oral argument counsel for both Blue Cross and the Commissioner stated that the order prohibiting further advertisements or other acts of communication expired by its own terms when the Commissioner entered her final order in the main rate case. Blue Cross thus conceded at oral argument that

its challenge to this action by the Commissioner is now moot.

Blue Cross did not attempt to argue that this issue is one "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). If such a showing had been made, the jurisdiction of this Court would not be defeated "simply because the order attacked has expired." *Nebraska Press Association v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683 (1976). However, absent an attempt by Blue Cross to meet the "capable of repetition yet evading review" standard, and especially in light of Blue Cross's apparent concession that this issue is moot, we are constrained to so hold.

### III.

■ The remainder of Blue Cross's complaint addresses the $26,000 deduction from the rate established by the Commissioner. As noted above, Blue Cross has appealed the Commissioner's final order in the rate case to the Michigan courts pursuant to Mich.Comp.Laws §§ 24.301 *et seq.* The existence of this ongoing state proceeding requires that we abstain under the doctrine of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), as articulated in *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982).

■ The principle of comity, as brought to life by *Younger* and its progeny, prohibits "federal court interference with pending state judicial proceedings absent extraordinary circumstances." 102 S.Ct. at 2515. *Younger* abstention, born in a criminal context, is now "fully applicable to noncriminal judicial proceedings when important state interests are involved." *Id.* (citations omitted). If vital state interests are implicated in the ongoing state judicial proceeding, federal courts should abstain "unless state law clearly bars the interposition of the constitutional claims." *Moore v. Sims,* 442 U.S. 415, 426, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1979).

The regulation of insurance companies clearly involves important state interests. This conclusion follows from the McCarran-Ferguson Act, 59 Stat. 33, as amended, 15 U.S.C. §§ 1011 *et seq.* (1982), wherein Congress declared "that the continued regulation and taxation by the several states of the business of insurance is in the public interest." 15 U.S.C. § 1011. Towards this end, Congress provided that "[t]he business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a).

The McCarran-Ferguson Act was Congress' response to *United States v. South-Eastern Underwriters Ass'n,* 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944). *See Group Life & Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 217–220, 99 S.Ct. 1067, 1076–1078, 59 L.Ed.2d 261 (1979); *St. Paul Fire & Marine Insurance Co. v. Barry,* 438 U.S. 531, 538–540, 98 S.Ct. 2923, 2928–2929, 57 L.Ed.2d 932 (1978). Prior to *South-Eastern Underwriters,* it was assumed that States "enjoyed a virtually exclusive domain over the insurance industry." 438 U.S. at 539, 98 S.Ct. at 2928. In *South-Eastern Underwriters* the Supreme Court held that an insurance company which conducted a substantial part of its transactions across state lines was engaged in interstate commerce and thus was subject to the antitrust laws. Within a year of this decision, Congress passed the McCarran-Ferguson Act, the purpose of which was "broadly to give support to the existing and future state systems for regulating and taxing the business of insurance." *Prudential Insurance Co. v. Benjamin,* 328 U.S. 408, 429, 66 S.Ct. 1142, 1155, 90 L.Ed. 1342 (1946).

A consideration of the events leading to the passage of the McCarran-Ferguson Act, the language of the Act itself, and the subsequent interpretation of that Act by the Supreme Court as establishing a "preemptive role of state regulation" of the insurance industry, 438 U.S. at 546, 98 S.Ct. at 2932, leads inevitably to the conclusion that the regulation of insurers implicates

vital state interests. Thus, the only remaining question under the *Younger* doctrine is whether "the state proceedings afford an adequate opportunity to raise the constitutional claims...." *Moore v. Sims,* 442 U.S. at 430, 99 S.Ct. at 2381.

Mich.Comp.Laws § 24.306(1)(a) provides that a state court "shall hold unlawful and set aside a decision or order of an agency if substantial right of the petitioner have been prejudiced because the decision or order is ... [i]n violation of the constitution or a statute." Clearly, Michigan law provides an ample opportunity for Blue Cross to raise its constitutional claims in the same state court proceeding in which other aspects of the Commissioner's order are challenged. Blue Cross has not attempted to demonstrate "bad faith, harassment or some other extraordinary circumstance that would make abstention inappropriate." *Middlesex County,* 102 S.Ct. at 2523. We must therefore abstain from considering constitutional challenges to the final rate approved by the Commissioner.

Accordingly, the judgment of the District Court is affirmed.