760 F.2d 673
 53 USLW 2573
 Larry TRAUGHBER and Delores Traughber, Plaintiffs-Appellants,
v.
Kenneth Edward BEAUCHANE; Kathy Lynn Beauchane; Michael W.
Binkley; Thomas Boyers IV; Ann Stroud; Clerk,
Circuit Court for Robertson County,
Springfield, Tennessee,
Defendants-Appellees.
 Nos. 84-5366, 84-5703.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 16, 1985.
Decided April 22, 1985.
 
 William B. Vest, argued, Hendersonville, Tenn., for plaintiffs-appellants.
 John M.L. Brown, Nashville, Tenn., for defendants-appellees.
 W. Bryan Brooks, Levine & Brewer, Nashville, Tenn., for A. Stroud.
 W.J. Michael Cody, Atty. Gen., Michael Lee Parsons, argued, Nashville, for T. Boyers.
 Before ENGEL, KRUPANSKY and WELLFORD, Circuit Judges.
 KRUPANSKY, Circuit Judge.
 
 
 1
 Plaintiffs Larry and Delores Traughber (Traughbers/appellants) appeal the district court's dismissal of their Sec. 1983 lawsuit. The district court predicated its decision on the doctrine of abstention articulated in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.
 
 
 2
 The Traughbers were engaged in the business of purchasing, selling and renting real property, including residential properties, in Robertson County, Tennessee. One of their residential tenants had been a babysitter for Kenneth and Kathy Beauchane, defendants below (Beauchanes/appellees). On February 3, 1983, the Beauchanes's daughter was injured while at the babysitter's residence.
 
 
 3
 On June 20, 1983, the Beauchanes filed a state court legal action against the Traughbers. They charged negligence by the landlords had caused their daughter's injuries and sought damages in excess of one million dollars. On the same day, the Beauchanes secured a lien lis pendens on the real property owned by the Traughbers. The Traughbers immediately filed a motion to dismiss the encumbrance on the property, and the state court scheduled a hearing on the motion for August 12, 1983.
 
 
 4
 On August 10, 1983, the Beauchanes obtained a "Writ of Ancillary Attachment" from the Clerk of the Circuit Court for Robertson County, appellant Ann Stroud (Stroud). Pursuant to the writ, the Robertson County Sheriff's Department seized all of the Traughbers's real property which was situated in the county.
 
 
 5
 On August 12, 1983, appellant Judge Thomas Boyers, IV, Judge of the Circuit Court for Robertson County (Judge Boyers), dismissed the lien lis pendens on the Traughber's real property. Judge Boyers also scheduled a subsequent hearing for September 6, 1983 on the Traughbers's motion to dissolve the prejudgment attachment and seizure of their real property. The hearing was conducted and, on October 12, 1983, Judge Boyers ordered the ancillary attachment abated as having been procured in violation of the state statute.
 
 
 6
 Because of the state rules of procedure the attachment could not be lifted until 30 days following the order of abatement. The abatement order therefore was to take effect on November 12, 1983. On November 4, 1983, the Beauchanes applied for, and Clerk Stroud issued, a second Writ of Ancillary Attachment. No bond was posted because the Beauchanes had executed a pauper's oath. The county sheriff dutifully seized the Traughbers's property a second time. This time, Judge Boyers sustained the attachment.
 
 
 7
 As a result of the ongoing seizure of their property, the Traughbers alleged that they were foreclosed from conducting their real estate business and as a result their income was reduced by 75%.
 
 
 8
 On November 30, 1983, the Traughbers instituted this Sec. 1983 action against the Beauchanes, Clerk Stroud, Judge Boyers, and Michael W. Binkley, who was the attorney the Beauchanes had engaged to obtain the lien and attachments. The complaint asserted that the attachment had prevented the Traughbers from continuing their business, from obtaining commercial credit or loans, foreclosed them from meeting their financial obligations, and had caused emotional and physical harm, all in contravention of their equal protection, due process, and fourth amendment rights as secured by the fourteenth amendment. They sought declaratory and injunctive relief including a declaration that the state's attachment statutes were facially, and as applied in this case, unconstitutional, and an order enjoining defendants from further attachments of their property thereunder.
 
 
 9
 The district court invoked the abstention doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and dismissed the complaint. There ensued this timely appeal.
 
 
 10
 It appears that this circuit has not articulated the standard to be applied by this court in reviewing decisions of abstention by district courts. The Eleventh Circuit apparently has applied an abuse of discretion standard, Forehand v. First Alabama Bank of Dotham, 727 F.2d 1033, 1036 (11th Cir.1984) (dissenting opinion), which is an arguable standard because the abstention doctrine is not constitutionally mandatory and is reflective of equity principles. The Ninth Circuit has applied a de novo review at least as to Younger abstention issues. Goldie's Bookstore v. Superior Court, 739 F.2d 466, 468 (9th Cir.1984). The Third Circuit reviews abstention dispositions de novo. See D'Iorio v. Delaware County, 592 F.2d 681 (3d Cir.1978). Although decisions by this circuit have not directly addressed the appropriate standard to be applied within this circuit, the existing decisions would imply approval of a de novo review. Blue Cross & Blue Shield of Michigan v. Baerwaldt, 726 F.2d 296 (6th Cir.1984); United States v. Anderson County, Tennessee, 705 F.2d 184 (6th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 548, 78 L.Ed.2d 722 (1983).
 
 
 11
 Because theories of state and federal law, and expressions of federalism and comity, are so interrelated in the decision to abstain such dispositions are elevated to a level of importance dictating de novo appellate review.
 
 
 12
 In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court refused to enjoin state criminal proceedings which the plaintiffs claimed had been undertaken pursuant to unconstitutional state criminal statutes. The Supreme Court
 
 
 13
 concluded that the judgment of the District Court, enjoining appellant Younger from prosecuting under these California statutes, must be reversed as a violation of the national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances. We express no view about the circumstances under which the federal courts may act when there is no prosecution pending in state courts at the time the federal proceeding is begun.
 
 
 14
 401 U.S. at 41, 91 S.Ct. at 749 (footnote omitted).
 
 
 15
 Younger was by its terms and analysis strictly limited to criminal settings in recognition of the extreme importance which states placed on their criminal proceedings. In Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), reh'g denied, 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463, the Court addressed the application of Younger to state civil proceedings.
 
 
 16
 In Huffman, the sheriff and the prosecuting attorney of Allen County, Ohio, instituted a civil action pursuant to the state nuisance statutes against a theater operating in Lima, Ohio. The pertinent state statutes provided that a facility wherein obscene films were exhibited constituted a common nuisance and, if so adjudged, could be closed for up to one year. The statute also permitted preliminary injunctive closings pending a final judgment of common nuisance status. The statute further permitted the sale of personal property used in conducting the nuisance. The state trial court in Huffman rendered judgment for the civil plaintiffs (the county's sheriff and the prosecuting attorney). The judgment also approved the seizure and sale of the personal property used in the theater's operations.
 
 
 17
 The defendant theater did not appeal that judgment through the state court system. Instead, it immediately instituted a Sec. 1983 suit in the United States District Court for the Northern District of Ohio, which convened a three-judge panel.
 
 
 18
 The district court reached the merits of the dispute without addressing the abstention issue. Direct appeal to the Supreme Court followed.
 
 
 19
 Justice Rehnquist writing for the Court in Huffman, observed that insofar as the Younger doctrine was anchored in principles of comity and federalism the doctrine was generally applicable to civil as well as criminal proceedings. 420 U.S. at 604, 95 S.Ct. at 1208 ("[t]he component of Younger which rests upon the threat to our federal system is thus applicable to a civil proceeding such as this quite as much as it is to a criminal proceeding"). The Court then emphasized the criminal character of the underlying state action:
 
 
 20
 [W]e deal here with a state proceeding which in important respects is more akin to a criminal prosecution than are most civil cases. The State is a party to the Court of Common Pleas proceeding, and the proceeding is both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials. Thus, an offense to the state's interest in nuisance litigation is likely to be every bit as great as it would be were this a criminal proceeding. Similarly, while in this case the District Court's injunction has not directly disrupted Ohio's criminal justice system, it has disrupted that State's efforts to protect the very interests which underlie its criminal laws and to obtain compliance with precisely the standards which are embodied in its criminal laws.
 
 
 21
 420 U.S. at 604-05, 95 S.Ct. at 1208 (citation and footnote deleted).
 
 
 22
 While expansive of Younger's scope, the Huffman Court limited the civil counterpart to Younger which it had created:
 
 
 23
 For the purposes of the case before us, however, we need make no general pronouncements upon the applicability of Younger to all civil litigation. It suffices to say that for the reasons heretofore set out, we conclude that the District Court should have applied the tests laid down in Younger in determining whether to proceed to the merits of appellee's prayer for relief against this Ohio civil nuisance proceeding.
 
 
 24
 420 U.S. at 607, 95 S.Ct. at 1209-1210.
 
 
 25
 The Court again addressed the civil applicability of the Younger doctrine in two opinions issued during the 1976 Term of Court: Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); and, Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977).
 
 
 26
 In Juidice v. Vail, Vail had defaulted on a credit arrangement and a state court default judgment of $534.36 had been entered against him. Three months later, the judgment being unpaid, the creditor's attorney, acting as an officer of the state court under the authority of a state statute, issued a subpoena directing Vail to attend a deposition preliminary to the execution of the judgment. Vail refused to attend the deposition and, acting on the creditor's motion, appellant Juidice, a state judge, issued an order directing Vail to show cause why he should not be held in contempt of court for violating the subpoena. Vail did not attend the court contempt hearing, was adjudged in contempt, and fined $250.00 plus costs. Vail refused to pay the fine and Juidice ordered his arrest. The warrant was executed, Vail was jailed for one day and released when he paid the fine.
 
 
 27
 Subsequently, Vail and other judgment debtors challenged the constitutionality of the state's statutory contempt procedures. A three judge federal district court ruled the statutes unconstitutional. On direct appeal to the Supreme Court, the appellants urged that the district court should have abstained and the Supreme Court, again per Justice Rehnquist, agreed.
 
 
 28
 As an initial matter, Justice Rehnquist rejected the district court's concededly "not ... implausible" view that Younger and Huffman were narrowly applicable to quasi-criminal civil actions. 430 U.S. at 334, 97 S.Ct. at 1217. Justice Rehnquist identified the controlling principle as the degree of importance of the state interests implicated in the proceeding and not the character of the underlying state civil action:
 
 
 29
 A State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest. Perhaps it is not quite as important as is the State's interest in the enforcement of its criminal laws, or even its interest in the maintenance of a quasi-criminal proceeding such as was involved in Huffman, supra. But we think it is of sufficiently great import to require application of the principles of those cases. The contempt power lies at the core of a State's judicial system.
 
 
 30
 430 U.S. at 335, 97 S.Ct. at 1217 (citations omitted). The Supreme Court did not focus on the purely civil character of the action placed in issue by the relationship between the judgment creditor and debtor, but rather upon the separate contempt action instigated by the state judge. See 430 U.S. 336 n. 12, 97 S.Ct. 1217 n. 12 (citations omitted):
 
 
 31
 Contempt in these cases, serves, of course, to vindicate and preserve the private interests of competing litigants, but its purpose is by no means spent upon purely private concerns. It stands in aid of the authority of the judicial system, so that its orders and judgments are not rendered nugatory.
 
 
 32
 The second relevant decision of the 1976 Term, Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), has a superficial similarity to the case at bar because the underlying state civil proceeding involved an attachment action.
 
 
 33
 The state department of public assistance had discovered that the Hernandezs had misrepresented their assets when they applied for aid. Such conduct was a crime in the state; however, the public aid department elected to bring only a civil action to recover the monies improperly obtained by the Hernandezs. The civil action charged that they had fraudulently concealed their assets while they applied for and received public assistance. Ancillary to the civil fraud complaint, the state obtained a writ of attachment on the funds in a credit union account which belonged to the Hernandezs. The Hernandezs were not notified of the complaint, the attachment, nor of the seizure until after the monies were attached, all in accordance with the state law.
 
 
 34
 They filed no answer nor did they attempt to defend against the complaint or attachment in state court. Instead, they instituted a civil rights action in federal court by which they challenged the constitutionality of the attachment procedures. The three-judge federal district court addressed the merits of the constitutional attack and declined to exercise abstention under Huffman and Younger, stating:
 
 
 35
 In Huffman, the State of Ohio proceeded under a statute which gave an exclusive right of action to the state. By contrast, the Illinois Attachment Act provides a cause of action for any person, public or private. It is mere happenstance that the State of Illinois was the petitioner in this attachment proceeding. It is likewise coincidental that the pending state proceedings may arguably be quasi-criminal in nature; under the Illinois attachment act, they need not be.
 
 
 36
 Hernandez v. Danaher, 405 F.Supp. 757, 760 (N.D.Ill.1975), quoted by Trainor v. Hernandez, 431 U.S. at 439, 97 S.Ct. at 1915. The Supreme Court, per Justice White, disagreed. That the state was a party to the underlying action, even if by happenstance or coincidence, indicated that vital state interests were involved in the underlying state civil proceeding. In Huffman, the Court noted, that the state was a party was a crucial element in the decision to invoke Younger in that "civil" context. Similarly, in Juidice, the underlying state action was criminal in character and intertwined with the state's interest in the vindication of its court system through the contempt process. Thus, for the purposes of abstention review, the substance of the base civil dispute was analytically disengaged from the quality and character of the state's active interest and participation in the proceedings attacked by the federal actions in both Huffman and Juidice. In Trainor, the state's active participation in the civil proceeding arose from its defense of the fiscal integrity of the state's public assistance programs. Therein the Court concluded that the action fell within the Younger doctrine as applied to civil actions by Huffman.
 
 
 37
 The state action was a suit by the State to recover from appellees welfare payments that allegedly had been fraudulently obtained. The writ of attachment issued as part of that action. The District Court thought that Younger policies were irrelevant because suits to recover money and writs of attachment were available to private parties as well as the State.... But the fact remains that the State was a party to the suit in its role of administering its public-assistance programs. Both the suit and the accompanying writ of attachment were brought to vindicate important state policies such as safeguarding the fiscal integrity of those programs.... [T]he principles of Younger and Huffman are broad enough to apply to interference by a federal court with an ongoing civil enforcement action such as this, brought by the State in its sovereign capacity.
 
 
 38
 431 U.S. at 444, 97 S.Ct. at 1918 (footnote omitted).
 
 
 39
 In Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), the Court, once again through Justice Rehnquist, directed application of abstention to a civil proceeding. The salient facticities identified by the Supreme Court which counseled in favor of abstention in Moore v. Sims were the state's participation as a party to the underlying civil proceeding, the vital state interests which the state advanced by its participation (Moore v. Sims involved the state's attempt to protect children by removing them from neglectful or abusive parents), and the federal plaintiff's ability to raise constitutional issues in the state court as a defense to the state's actions.
 
 
 40
 In Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), a lawyer not directly involved in a pending criminal case made critical comments to members of the press about the conduct of a state trial. An ethics complaint was lodged against him by a member of the state ethics board.
 
 
 41
 Instead of responding to the charge, the lawyer and others filed suit in the federal district court. The lawsuit contended that the ethics charge was in violation of the lawyer's first amendment rights. In addition, the complaint directly attacked the disciplinary rules pursuant to which he had been charged as unconstitutionally vague and overbroad. The district court invoked its Younger abstention power and dismissed the action. A divided panel of the United States Court of Appeals for the Third Circuit reversed concluding that the disciplinary procedures failed to provide a meaningful opportunity to adjudicate constitutional defenses to ethics allegations. The court of appeals also characterized the disciplinary proceedings as administrative and nonadjudicative and unlike the state criminal or quasi-criminal proceedings to which Younger abstention had historically been applied. Certiorari was granted and while the review was pending in the United States Supreme Court, the New Jersey Supreme Court entertained oral arguments by the Middlesex respondent on the precise constitutional claims asserted by the lawyer; in addition, the New Jersey Supreme Court amended its procedural rules to permit interlocutory review of a constitutional challenge to disciplinary proceedings.
 
 
 42
 The Chief Justice, delivering the opinion for a unanimous United States Supreme Court, determined that the disciplinary proceeding was judicial and not administrative in nature. The ethics procedures, the Court ruled, implicated especially important state interests relating to control over the professional conduct of its attorneys. The Court further held that in view of the state court's actions subsequent to the intermediate appellate decision, it was evident that a constitutional defense could be enunciated in a meaningful manner by ethics charge respondents.
 
 
 43
 The Third Circuit was therefore reversed. As relevant to this case, the Chief Justice addressed the above legal authorities with a rather pithy and comprehensive statement of the legal issues and standards implicated in a potential Younger abstention case. The Court's opinion stated:
 
 
 44
 The policies underlying Younger are fully applicable to noncriminal judicial proceedings when important state interests are involved. Moore v. Sims, 442 U.S. 415, 423 [99 S.Ct. 2371, 2377, 60 L.Ed.2d 994] (1979); Huffman v. Pursue, Ltd., 420 U.S. 592, 604-605 [95 S.Ct. 1200, 1208-1209, 43 L.Ed.2d 482] (1975). The importance of the state interest may be demonstrated by the fact that the noncriminal proceedings bear a close relationship to proceedings criminal in nature, as in Huffman, supra. Proceedings necessary for the vindication of important state policies or for the functioning of the state judicial system also evidence the state's substantial interest in the litigation. Trainor v. Hernandez, 431 U.S. 434 [97 S.Ct. 1911, 52 L.Ed.2d 486] (1977); Juidice v. Vail, 430 U.S. 327 [97 S.Ct. 1211, 51 L.Ed.2d 376] (1977). Where vital state interests are involved, a federal court should abstain "unless state law clearly bars the interposition of the constitutional claims." Moore, 442 U.S., at 426 [99 S.Ct., at 2379]. "[T]he ... pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims...." Id., at 430 [99 S.Ct. at 2381]. See also Gibson v. Berryhill, 411 U.S. 564 [93 S.Ct. 1689, 36 L.Ed.2d 488] (1973).
 
 
 45
 The question in this case is threefold: first, do state bar disciplinary hearings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges.
 
 
 46
 It is immediately obvious that the case at bar is vitally different from each of the cases in which the Supreme Court has permitted the extension of Younger to putatively "civil" state proceedings. In each such case the state was a party to the underlying state judicial proceeding. In addition, each of those cases was criminal or quasi-criminal in nature or otherwise presented issues on matters essential to the operation of the state government. See Miofsky v. Superior Court, 703 F.2d 332, 337 (9th Cir.1983).
 
 
 47
 The poignancy of this observation is surfaced by a review of Trainor v. Hernandez wherein the district court rejected abstention because, although the state was a party to the attachment action, that was merely fortuitous; the district court had reasoned that since any private party might have instituted a similar proceeding, no vital state interest was involved. It will be remembered that the Supreme Court specifically rejected that analysis; instead, the Court indicated that it was precisely because the state was a party that abstention was facially appropriate. Upon closer inspection it appeared that the state's interest in the litigation was indeed a vital matter to the government, namely the fiscal integrity of its public assistance program.
 
 
 48
 In the case at bar, the state was not a party to the purely civil tort action between two of its citizens. When the state is not a party, and when the underlying judicial proceeding is not a criminal action, Younger abstention is inappropriate absent extraordinary circumstances. See United States v. Anderson County, Tennessee, 705 F.2d 184, 186 (6th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 548, 78 L.Ed.2d 722 (1983) (in Anderson County, this court noted that "[t]he 'virtually unflagging obligation' of the federal forum to exercise its jurisdictional powers may be abdicated out of deference to parallel litigation in the state forum in only the most exceptional circumstances").[1] Cf. Middlesex, 102 S.Ct. at 2515; Moore v. Sims, 442 U.S. at 426, 99 S.Ct. at 2379.
 
 
 49
 Appellees urge that a vital state interest exists in this case. The claimed interest is "Tennessee's interest in applying and interpreting its prejudgment statute ... to insure that successful tort plaintiffs obtain recovery against nonresident defendants". This claim is not convincing for two reasons. First, the defendants to the subject tort action are not nonresidents. Second, and more substantively, the Beauchanes's tort suit against the Traughbers hardly qualifies as a "[p]roceeding( ) necessary for the vindication of important state policies or the functioning of the state judicial system". Middlesex, supra (Chief Justice Burger's statement of the test for "vitalness").
 
 
 50
 The status of the instant dispute is analytically closer to the dispute in Miofsky v. Superior Court of the State of California, etc., 703 F.2d 332 (9th Cir.1983). Therein, Miofsky was a medical doctor specializing in anesthesiology. In 1979 he pled nolo contendere to a criminal charge involving the sexual abuse of children. The state court appointed three doctors to examine him and they concluded Miofsky was a "mentally disordered sex offender" who was treatable. Consistent with that conclusion, Miofsky was committed to a secure treatment facility.
 
 
 51
 Subsequently, Miofsky was named the defendant in numerous tort actions filed by his former patients. The plaintiffs in those actions scheduled the deposition of the three psychiatrists who had examined Miofsky. Miofsky moved the state trial court to issue a protective order prohibiting the doctors from disclosing any information they obtained from their court-ordered examinations. The trial court denied the protective order and interlocutory appeals were denied.
 
 
 52
 Miofsky then instituted a Sec. 1983 action in federal court asserting that the ancillary order permitting the deposition violated a number of his federally-protected rights. The district court sua sponte dismissed the complaint asserting a lack of subject matter jurisdiction and citing, inter alia, Younger abstention. The Ninth Circuit did not reach the merits of the action or the propriety of any injunction against the discovery, but did conclude that, under the facts as alleged, Younger abstention was not applicable.
 
 
 53
 The circuit reviewed Younger, Huffman, Juidice, Trainor, Moore v. Sims, and Middlesex, and concluded that a simple tort dispute between two private parties did not implicate the "vital state interests" necessary to invoke Younger:
 
 
 54
 In each of these [Supreme Court] cases, the state or an agent of the state was a party to the proceeding.... In addition, each of these civil suits bore similarities to criminal proceedings or otherwise implicated state interests vital to the operation of state government. In short, none of these cases authorizes our departure from the traditional distinction between civil and criminal proceedings as originally set forth in Younger. Indeed, in Middlesex, the Court carefully avoided the implication that the Younger doctrine applied indiscriminately to civil proceedings.
 
 
 55
 * * *
 
 
 56
 * * *
 
 
 57
 Unless "vital state interests" are at stake, federal district courts are not proscribed from interfering with ongoing state civil proceedings when necessary to vindicate federally protected civil rights.
 
 
 58
 703 F.2d at 337-38. See also Goldie's Bookstore v. Superior Court etc., supra.
 
 
 59
 In sum, neither Younger, nor its progeny, control the case at bar. The Traughbers do not seek to enjoin state criminal proceedings.[2] Younger, supra. They do not seek to interrupt quasi-criminal proceedings, Huffman, supra, proceedings in aid of the state's criminal laws, id., proceedings initiated (or participated in) by the state in its sovereign capacity, Trainor, supra, nor proceedings instituted in defense of some vital state interest. Middlesex, supra; Moore v. Sims, supra; Juidice, supra. Rather, they invoke federal jurisdiction under the civil rights act to prevent a private litigant from utilizing state statutes in a manner that allegedly violates their constitutional rights. Goldie's Bookstore, supra; Miofsky, supra. The district court had subject matter jurisdiction, which it should have entertained in pursuit of its obligation to decide cases properly before it. United States v. Anderson County, Tennessee, supra.
 
 
 60
 The appellees also argue that the district court's decision to abstain was correct under Pullman abstention. For a number of reasons, the Pullman doctrine in inapt in this case.
 
 
 61
 Pullman abstention derives from Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In that case the state railroad agency had ordered that "no sleeping car shall be operated on any line of railroad in the State of Texas ... unless such cars are continuously in the charge of an employee ... having the rank and position of Pullman conductor". This seemingly innocuous regulation had the invidious purpose of excluding blacks from employment on sleeping cars. "As is well known", the Supreme Court remarked, all Pullman conductors were white, while all porters were black.
 
 
 62
 A civil rights lawsuit challenged the regulation as violative of the fourteenth amendment protections for black citizens. As the lawsuit developed at the trial level an issue arose as to the state agency's authority to promulgate such a regulation. The statutory foundation was vague on this point; read one way there was authority. The Supreme Court noted that the federal plaintiffs could have challenged the commission's statutory authority to issue the order, or the permissible scope of any such order, by prosecuting an appeal of the order through state courts. The unanimous Supreme Court directed the district court to retain jurisdiction but refrain from entering a decree until the federal plaintiffs had attempted to appeal the order and thus secure a state ruling on an uncertain issue of state law, namely whether the challenged regulation could be enforced against them, which ruling might obviate the federal issue.
 
 
 63
 In the case at bar, the Traughbers have requested the state courts to rule on the constitutionality of the attachment proceeding directed against them; the state courts refused to entertain argument on that point, preferring to abstain and defer to this federal tribunal. Thus, if Pullman required the federal court to retain jurisdiction, but refrain from ruling in deference to the state courts, and the state courts refused to act while the matter remained in federal court, the judicial comity which underlays Pullman becomes a judicial comedy at the expense of the Traughbers.
 
 
 64
 A more serious and substantive reason obtains for rejecting Pullman abstention in this case. Pullman abstention is applicable where state interpretation of an unclear law would remove the federal issue by making unnecessary a constitutional decision. In this case, no ruling by a state court interpreting the attachment statute has permitted the federal trial court to avoid ruling on whether the Traughbers's property had been seized, their livelihood restricted, and their business destroyed in violation of the procedural and substantive guarantees of the fourteenth amendment.[3]
 
 
 65
 Finally, appellees argue that the dismissal should be upheld because a proper Sec. 1983 action was not alleged against them. They rely on various doctrines of immunity and an asserted failure of any action "under color of" state law. These matters are intertwined with the facts of the case which have never been permitted to be developed through discovery; further, the district court, because it dismissed the cause, has not had the opportunity to consider those claims. Therefore, when the case is returned to the trial court the parties may wish, at the appropriate juncture, to join those issues in that court, which is a more appropriate forum for the initial review of those claims.
 
 
 66
 The decision below is reversed and the matter is remanded for proceedings consistent with this opinion. The mandate shall also reflect this court's desire that this case be accorded expeditious treatment in the district court. The appellants are awarded their costs pursuant to Federal Rule of Appellate Procedure 39.
 
 
 67
 WELLFORD, Circuit Judge, concurring.
 
 
 68
 I agree with the majority in this case that abstention under Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), is not appropriate, and that the decision of the district court should be reversed and the matter remanded for expeditious treatment in view of the circumstances. I reach this conclusion, however, for somewhat different reasons herein set forth.
 
 
 69
 In Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Supreme Court held that a federal district court should ordinarily abstain from exercising its equitable power to enjoin a state criminal prosecution.[1] Federal courts have uniformly evolved a three-part test for determining when abstention is justified due to the federalism concerns expressed in Younger. This court has recently listed the traditional elements for invoking Younger abstention: "(1) [T]here is an ongoing or pending state proceeding, (2) the proceeding is criminal and (3) no unusual circumstances exist which would counsel against abstention, such as prosecution under a flagrantly unconstitutional statute, bad faith prosecution or an inability to raise the constitutional challenge in the state proceeding." United States v. Anderson County, Tennessee, 705 F.2d 184, 188 (6th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 548, 78 L.Ed.2d 722 (1983).
 
 
 70
 The Supreme Court has also extended the applicability of Younger's federalism concerns into the civil sphere. The Younger doctrine of abstention can now be applied "to noncriminal proceedings when important state interests are involved." Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982); see also ADA-Cascade Watch Co. v. Cascade Resource Recovery, Inc., 720 F.2d 897, 902 (6th Cir.1983). For example, in Juidice v. Vail, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), the Court indicated that a state possessed sufficiently important interests in preserving the integrity of its court system's contempt power. Thus Juidice held that federal courts should ordinarily abstain from hearing an affected state party's complaint challenging the constitutionality of a state contempt statute. Id. at 334, 97 S.Ct. at 1216. And soon thereafter in Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), the Court indicated that a state also possessed sufficiently important interests in the property attachment power when the state was the plaintiff in an underlying suit charging welfare fraud. The Trainor Court did not explicitly extend its holding to the instant type of underlying private action involving the state attachment process. Yet the Trainor opinion was still critically viewed by dissenting Justices Brennan and Marshall as postponing "merely the formal announcement" that Younger could be applied in "civil suits generally." 431 U.S. at 454, 97 S.Ct. at 1923 (1977) (Brennan, J., with Marshall, J., dissenting).
 
 
 71
 Since Trainor, the Court has continued to extend the applicability of Younger to other factual situations involving noncriminal state proceedings. See, e.g., Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979) (state-initiated civil suit to protect children by removing them from neglectful or abusive parents); Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), (attorney discipline proceedings conducted by a committee appointed by state supreme court).
 
 
 72
 I nevertheless conclude that federal abstention is not justified under Younger and its progeny here. Even if I were to concede that important state interests are involved in the attachment process, these interests are clearly outweighed by the countervailing factor that the federal plaintiffs have no adequate state remedy in the unusual circumstances of the instant case.
 
 
 73
 In Lamb Enterprises, Inc. v. Kiroff, 549 F.2d 1052, 1058 (6th Cir.), cert. denied, 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977), this Court explained that "[t]he availability of adequate state remedies is a critical factor in determining whether extraordinary injunctive relief should issue from the federal court." See also Louisville Area Inter-Faith Committee v. Nottingham Liquors, Ltd., 542 F.2d 652, 653 (6th Cir.1976).[2]
 
 
 74
 In Trainor, the Supreme Court also emphasized the importance of adequate state remedies under Younger:
 
 
 75
 Dismissal of the federal suit "naturally presupposes the opportunity to raise and have timely decided by a competent state tribunal the federal issues involved." Gibson v. Berryhill, 411 U.S. 564, 577 [93 S.Ct. 1689, 1697, 36 L.Ed.2d 488] (1973). "The policy of equitable restraint ... is founded on the premise that ordinarily a pending state prosecution provides the accused a fair and sufficient opportunity for vindication of federal constitutional rights." Kugler v. Helfant, 421 U.S. 117, 124 [95 S.Ct. 1524, 1531, 44 L.Ed.2d 15] (1975).
 
 
 76
 431 U.S. at 441, 97 S.Ct. at 1917. Thus, as this court recognized in United States v. Anderson County, the lack of adequate state remedies for a federal plaintiff constitutes one of the "unusual circumstances" under the third prong of the Younger test that militates against federal court abstention. 705 F.2d at 188.
 
 
 77
 Here the Traughbers have no state appeal as of right to challenge the constitutionality of the summary attachment of their real estate interests and business. This is because the state judge has refused to certify his decision upholding the attachment as a final order or allow an interlocutory appeal. It is unclear from the record in the federal case whether they have been allowed to develop their constitutional arguments before the state court, and it has been eighteen months since their property was attached. The federal district court simply assumed the adequacy of appeal after a final decision was reached in the underlying tort case. Its opinion alternatively pointed to the adequacy of bringing an extraordinary appeal under Rule 10 of the Tennessee Rules of Appellate Procedure.
 
 
 78
 The remedy of a state appeal after the tort trial is inadequate here and thus cannot justify Younger abstention. The Traughbers allege irreparable harm to their livelihood as real estate operators due to the alleged summary and unjustified attachment of their business property in an otherwise unrelated tort case. Unlike the classic Younger situation, the plaintiffs' claim against the process of attachment cannot serve as a defense in the tort trial on appeal. The attachment issue is thus entirely ancillary to disposition of the underlying cause of action, and not contingent upon its outcome. In similar situations, the Supreme Court has not even deemed it proper to confront the federalism concerns of Younger. The two best examples of the Court's position are Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), and Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).[3]
 
 
 79
 In Lynch, the wages of the federal plaintiff were first garnished in a state court suit alleging her nonpayment of a promissory note. She filed a Sec. 1983 suit alleging deprivation of due process in the summary garnishment. The district court specifically ruled that acceptance of federal jurisdiction over her Sec. 1983 complaint would substantially interfere with the progress of the underlying nonpayment suit. Lynch, 318 F.Supp. 1111, 1115 (1970) ("the interference with existing creditors' suit would probably be substantial"). The district court also appeared to suggest that the underlying suit provided "an adequate state forum." Id. The Supreme Court noted the district court's emphasis on the existence of uncompleted proceedings in the underlying state suit. 405 U.S. at 554, 92 S.Ct. at 1123. Yet the Court refused to accept the adequacy of appeal after the underlying proceedings were completed. Rather than invoking the Younger abstention doctrine, the Supreme Court concluded that the federal courts should exercise jurisdiction over the Sec. 1983 claim. Id. at 556, 92 S.Ct. at 1124.
 
 
 80
 In Fuentes the underlying state action also proved not to bar federal plaintiffs' suit. Household goods of the Fuentes plaintiffs were replevied before judgment in state court suits for nonpayment of installment contracts. In their Sec. 1983 suits plaintiffs alleged deprivation of procedural due process from the summary pre-judgment replevin of the household goods. The district courts exercised jurisdiction over the cases, upholding the constitutionality of the state replevin statutes. The Supreme Court acknowledged that the federal plaintiffs had brought their Sec. 1983 suit without pursuing possible remedies in the underlying state suit for nonpayment. 407 U.S. at 71, 92 S.Ct. at 1989. Yet the Court showed no hesitation in affirming that the Sec. 1983 complaints exhibited a proper jurisdictional foundation for challenge to the constitutionality of the state laws in federal court. Id.
 
 
 81
 Rather than invoking abstention under Younger, the Supreme Court specifically distinguished the Fuentes situation from Younger. The Court noted that, in contrast to the classic Younger situation, the Fuentes suits for federal equitable relief would not interfere with pending or future court proceedings in the underlying state suit:
 
 
 82
 Neither Mrs. Fuentes nor the appellants in No. 5138 sought an injunction against any pending or future court proceedings as such. Compare Younger v. Harris, 401 U.S. 37 [91 S.Ct. 746, 27 L.Ed.2d 669]. Rather, they challenged only the summary extra-judicial process of prejudgment seizure of property to which they had already been subjected. 407 U.S. at 71 n. 3 [92 S.Ct. at 1989 n. 3] (emphasis added).
 
 
 83
 Like Fuentes, the instant case features a situation where the federal plaintiff's Sec. 1983 suit is ancillary to and thus will not enjoin the uncompleted proceedings in the underlying state case.[4]
 
 
 84
 Trainor v. Hernandez, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), reinforces Lynch and Fuentes and also establishes that an extraordinary state appeal in the circumstances here does not alternatively supply an adequate state remedy. Similar to the Lynch and Fuentes federal plaintiffs, the federal plaintiffs filed a Section 1983 claim in federal court without pursuing any remedy or responsive action in the state courts.[5] Rather than dismissing the case under Younger, the Court actually remanded the case back to the district court for determination of "whether the Illinois attachment procedure provides a debtor with an appropriate forum in which to challenge the constitutionality" of the attachment action. Trainor, 431 U.S. at 466-67, 97 S.Ct. at 1929-30 (Stevens, J., dissenting).
 
 
 85
 Upon remand the district court held that the Illinois attachment procedure failed to provide an adequate remedy for a constitutional complaint alleging deprivation of procedural due process. Hernandez v. Finley, 471 F.Supp. 516, 518-20 (N.D.Ill.1978). It also held that various discretionary appeal routes under Illinois law "do not provide plaintiffs with a meaningful opportunity to appeal any adverse ruling." Id. at 520. This is authority for my conclusion that the appeal route under Tennessee's Rule 10 for extraordinary appeals is inadequate due to its discretionary nature. See State v. Willoughby, 594 S.W.2d 388 (Tenn.1980); and Dearborne v. State, 575 S.W.2d 259 (Tenn.1978).
 
 
 86
 Federal courts should provide a forum for potential relief when the state remedy is discretionary and thus uncertain for claims that state attachment procedures allow the seizure of property without supplying federal constitutional protections. See Tully v. Griffin, Inc., 429 U.S. 68, 73-77, 97 S.Ct. 219, 222-224, 50 L.Ed.2d 227 (1976); Gibson v. Berryhill, 411 U.S. 564, 577, 93 S.Ct. 1689, 1697, 36 L.Ed.2d 488 (1973). Cf. Kenner v. Morris, 600 F.2d 22, 24 (6th Cir.1979) (Younger abstention appropriate when state remedies certain and adequate). Unusual circumstances then exist in this case which counsel against abstention. There is an uncertain and speculative state remedy, and despite diligent efforts by plaintiffs, no state forum has been afforded them within a reasonable time to hear their serious constitutional challenges against the Tennessee law and the particular procedure in this case. It is also unclear whether there is actually a pending state proceeding which involves directly the validity of the Tennessee attachment procedure instituted against the Traughbers.
 
 
 87
 Since there has been no reasonable and timely opportunity afforded plaintiffs-appellants to raise in a state tribunal the important federal constitutional issues involved, abstention is inappropriate. There has been, despite appellants' efforts, no "fair and sufficient opportunity for vindication of [the] federal constitutional rights" of the Traughbers. Trainor v. Hernandez, 431 U.S. 434, 441, 97 S.Ct. 1911, 1917, 52 L.Ed.2d 486 (1977), quoting Kugler v. Helfant, 421 U.S. 117, 124, 95 S.Ct. 1524, 1531, 44 L.Ed.2d 15 (1975).
 
 
 88
 I would also agree with my colleagues that abstention is not appropriate under Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).
 
 
 
 [1]
 This is the affirmative construction of the negative pregnant of the Younger doctrine that where the parallel proceeding is criminal, or involves the state as a party advancing vital sovereign interests, refusal to abstain would be appropriate only in exceptional circumstances. See also Blue Cross & Blue Shield v. Baerwaldt, 726 F.2d 296, 299 (6th Cir.1984)
 
 
 [2]
 In fact strictly speaking they do not seek to enjoin the tort action. They merely seek the constitutionally-mandated level of protection of their property and business rights before suffering a loss of those rights by summary seizure
 
 
 [3]
 Following oral argument of this appeal the court was advised by the parties that the state litigation had come to a final disposition. The appellees have filed a suggestion of mootness based upon that resolution. For the same reason that Pullman abstention is inappropriate, this controversy is not moot. Therefore, the suggestion of mootness is rejected
 
 
 [1]
 The Federal Anti-Injunction Act, 28 U.S.C. Sec. 2283, bars most federal injunctive interference with state judicial proceedings. A Sec. 1983 claim, however, has been construed as an exception not proscribed by the Anti-Injunction Act. Mitchum v. Foster, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972)
 
 
 [2]
 These two Sixth Circuit cases--Nottingham and Lamb --provide basis for doubt as to whether the Younger rationale can be defeated on the grounds that important enough state interests are not implicated in this civil controversy. This court essentially held in very broad language that important enough state interests were implicated in those underlying civil controversies. Nottingham, 542 F.2d at 654, and Lamb, 549 F.2d at 1056. But see majority opinion of Krupansky, J., supra
 
 
 [3]
 In Lynch and Fuentes the Court was confronted by apparently impoverished debtors with pleas for constitutional protection from the summary legal action of creditors. In the present case an allegedly impoverished party is using state law to tie up the assets of another party without posting any bond. We believe that the federal courts should be equally open to the plea for constitutional protection in both situations
 
 
 [4]
 It is thus debatable whether the first prong of the Younger abstention test requiring a "pending" state action is even met here. The federal suit challenging the constitutionality of the attachment process will not interfere with any "pending" state action on the attachment dispute, which is the only issue in federal court. See Trainor, 431 U.S. at 446 n. 9, 97 S.Ct. at 1919 n. 9. The Trainor plaintiffs had actually proceeded immediately to federal court even though the attachment notification provided a court date for plaintiffs' opportunity to challenge its validity. Id. In the instant case, no such state proceeding on the attachment is pending. Plaintiffs have been unable to obtain relief for a year and a half from the attachment without any trial on the underlying tort claim, which is pending
 
 
 [5]
 The Supreme Court noted that "[a]ppellees never filed an answer either to the attachment or to the underlying complaint. They did not seek a prompt hearing, nor did they attempt to quash the attachment on the ground that the procedures surrounding its issuance rendered it and the Act unconstitutional." Trainor, 431 U.S. at 437-38, 97 S.Ct. at 1914-15