Royal FEASTER, Plaintiff–Appellee,

v.

Thomas MIKSCH, Terry Livers, Joseph Barclay, Phillip Barnes, and City of Akron, Defendants–Appellants.

No. 87–3777.

United States Court of Appeals, Sixth Circuit.

Argued March 1, 1988.
Decided May 2, 1988.

Patricia C. Ambrose Rubright (argued), Asst. Director of Law, Akron, Ohio, for defendants-appellants.

James R. Willis (argued), Cleveland, Ohio, for plaintiff-appellee.

Before KENNEDY and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.

KENNEDY, Circuit Judge.

Defendants, police officers of the city of Akron, appeal the refusal by the District Court to grant them summary judgment on the basis of qualified immunity in this section 1983 action. Alternatively, they assert that the District Court should have abstained from proceeding in this case pending the outcome of state criminal proceedings against Royal Feaster, the plaintiff in this case.

The decision of whether to abstain and the question of whether these defendants are entitled to qualified immunity are, as the parties have recognized, closely interconnected. Plaintiff's section 1983 claim is that defendants violated her constitutional rights in their execution of a search warrant. In order to decide the immunity issue, it would be necessary for the federal courts involved to pass on the facial validity of the search warrant, whether the warrant authorized the acts that Ms. Feaster alleges, and on factual contentions concerning what constitutes plain view.

Any adjudication by this Court, or by the District Court, as to whether defendants are entitled to qualified immunity on these issues would necessarily determine the same questions as to the validity of the search warrant as are at issue in the criminal case that the state of Ohio is conducting against Ms. Feaster. We believe this result would be directly contrary to the policies underlying the long-standing doctrine of abstention enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny. In furthering those policies, this Court has said that a federal court should " 'stay its hand where disposition of the damage action would involve a ruling implying that a state conviction is or would be illegal,' " *Hadley v. Werner*, 753 F.2d 514, 516 (6th Cir.1985), quoting *Guerro v. Mulhearn*, 498 F.2d 1249, 1252 (1st Cir.1974).

While it is clear that federal courts must stay their proceedings when a federal plaintiff seeks injunctive or declaratory relief that would interfere with a state criminal or quasi-criminal proceeding, the Supreme Court has repeatedly declined to decide whether *Younger* requires federal court abstention when the federal action is purely for damages. *See Deakins v. Monaghan*, —— U.S. ——, —— n. 6, 108 S.Ct. 523, 529 n. 6, 98 L.Ed.2d 529 (1988); *id.* at ——, 108 S.Ct. at 531 (White, J. concurring). A plurality of the Circuits now apply *Younger* in some circumstances to damage claims, *id.*

This Court, as we have seen, has approved and followed the analysis of the Court of Appeals for the First Circuit, requiring federal court abstention when disposition of the damage action "would in-

volve a ruling implying that a state conviction is *or would be* illegal," *Hadley*, 753 F.2d at 516, (emphasis added). This is precisely the situation presented to us here. *Hadley* does not completely foreclose the issue in the present case, however, because in addition to the policies of federalism effectuated by *Younger* abstention, that case also involved the Congressional policy that the sole federal remedy of a state prisoner challenging his confinement is a habeas corpus action, and not a civil rights action under section 1983, *see Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973). Thus, although the plaintiff's federal claim was exclusively for damages, it was the combination of the policies represented by *Younger* and by *Preiser* that led this Court in *Hadley*, as it had led the First Circuit in *Guerro*, to the conclusion that abstention was required.

The present case may be distinguished from *Hadley* because Ms. Feaster's Fourth Amendment claims, if fairly litigated in the Ohio courts, may not be raised in a federal habeas corpus action, *see Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976). In *Hadley*, plaintiff's success in his civil rights complaint, which charged that defendants had denied him his constitutional right to effective assistance of counsel in an earlier criminal trial, would have had the same effect, because of *res judicata*, as a federal habeas corpus determination that he was confined in violation of the Constitution because he had been denied that assistance.[1] Because of *Stone*, there is little likelihood that Ms. Feaster may use this action as a means of avoiding the various procedural prerequisites to seeking habeas relief.

Nevertheless, we believe that the overriding basis on which *Hadley* was predicated is the need to avoid federal interference in ongoing state judicial proceedings that implicate vital state interests, including the state's interest in maintaining its system of criminal justice. The cases in which we have held that the *Younger* doctrine was not applicable reinforce the conclusion that it must be applied here.

In *Traughber v. Beauchane*, 760 F.2d 673 (6th Cir.1985), we reviewed the development of the *Younger* doctrine and concluded it could not apply when vital state interests were not at stake in the state litigation. In *Traughber*, the federal plaintiffs were attempting to enjoin a state court attachment proceeding on federal due process grounds; the state was not a party to the suit. In those circumstances, when the plaintiffs "invoke federal jurisdiction under the civil rights act to prevent a private litigant from utilizing state statutes in a manner that allegedly violates their constitutional rights," *id.* at 681, we held that the federal District Court had an obligation to resolve claims properly before it.

Similarly, in *Carras v. Williams*, 807 F.2d 1286, 1291–92 (6th Cir.1986), we held that *Younger* abstention was inappropriate precisely because "a federal court should not abstain from a case seeking monetary relief when the suit arises from a state judicial proceeding to which the state is not a party absent extraordinary circumstances."

While we held in both cases that the *Younger* doctrine did not apply, neither *Carras* nor *Traughber* supports a decision to proceed in the case now before us. Both cases stressed that the state proceedings involved were not criminal, and that, indeed, the state was not even a party. We believe that the key question in deciding whether *Younger* applies is not whether the federal action is for injunctive or declaratory relief rather than damages. Instead, the critical question is the nature and extent of the state's interest in the process and the degree to which the federal litigation would interfere with that interest. Plainly, an injunction against a state judicial proceeding is normally a greater interference than is the award of monetary damages, so that factor is not without relevance. But the language and reasoning of the entire *Younger* line in the Supreme Court and in our own Circuit convince us that the decision to abstain, based as it is on principles of federalism and comity, can-

---

1. In addition, the section 1983 claim might be decided in a jury trial; the habeas determina-
tion, of course, is for the court.

not depend entirely on whether or not the federal plaintiff is seeking only damages.[2] There are times, as in *Traughber,* when the issuance of an injunction by the federal court against the continuation of the state proceeding is not as disruptive to the state's interest as would be the decision, ostensibly resulting only in an award of damages but actually determining the result of a state criminal proceeding, that the action of a city official was unconstitutional. In such circumstances, the policy supporting abstention in the damage action is exactly the same as that requiring abstention in a declaratory judgment action, *see Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), since the only basis on which damages can be awarded is after determination that the conduct was illegal. *Cf. Fair Assessment in Real Estate Ass'n v. McNary,* 454 U.S. 100, 113, 102 S.Ct. 177, 184, 70 L.Ed.2d 271 (1981) (equal protection challenge to method of state tax assessments under section 1983 is functional equivalent of declaratory judgment action to declare method unconstitutional.) Such was the situation in *Hadley;* and it is the situation here.

We therefore hold that when disposition of a federal action for damages necessarily requires the resolution of issues that will determine the outcome of pending state criminal proceedings, *Younger* requires that the federal action not proceed.[3] It is therefore clear that, although defendants here would ordinarily be entitled to our review of the decision as to whether or not they will be required to defend this suit,

*Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985), neither we nor the District Court can make that decision without impermissibly intruding on Ohio's criminal process. In these circumstances, the proper course for the District Court was to stay the federal proceedings, *Deakins v. Monaghan.*[4]

The order of the District Court of June 4, 1987 is vacated and the action is remanded to the District Court with instructions to stay the action pending the final outcome of the state criminal proceedings.

---

2. The view that this distinction is determinative derives from the fact that when a federal court is asked to enjoin a state proceeding, it is sitting as a court of equity, and is empowered to act only when there is no adequate remedy at law. But this would be true without *Younger,* and indeed, without a federal system. It does not help decide cases, such as this, where the federal court is *not* being asked to use its equitable powers. Such cases must be resolved according to considerations of federalism, not the distinction between law and equity.

3. While the District Court did not explain its decision not to abstain, in light of our discussion we do not believe it necessary to remand the case for a statement of those reasons. Plaintiff's counsel has suggested that a federal court determination of the propriety of the fourth

amendment issues is necessary because the Ohio state courts routinely give these arguments short shrift, and *Stone* prevents federal collateral review of these matters. We do not believe that plaintiff's unsubstantiated claim satisfies the requirement that "extraordinary circumstances" must be shown to justify federal court action when *Younger* abstention would normally be required.

4. Whether or not this Court would normally entertain an appeal from the decision of a district court *not* to abstain at this procedural point, we are required to review it here in order to avoid deciding the immunity issue with which it is inextricably enmeshed. *Cf. Alexander v. Aero Lodge No. 735, Int'l. Ass'n,* 565 F.2d 1364 (6th Cir.1977), *cert. denied,* 436 U.S. 946, 98 S.Ct. 2849, 56 L.Ed.2d 787 (1978).