787 F.2d 588
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
AMERICAN ELECTRIC POWER COMPANY, INC.; KENTUCKY POWER
COMPANY; APPALACHIAN POWER COMPANY; COLUMBUS AND SOUTHERN
OHIO ELECTRIC COMPANY; INDIANA AND MICHIGAN ELECTRIC
COMPANY; OHIO POWER COMPANY AND AEP GENERATING COMPANY,
Plaintiffs-Appellants,
v.
KENTUCKY PUBLIC SERVICE COMMISSION; RICHARD D. HEMAN,
CHAIRMAN OF THE KY PUBLIC SERVICE COMMISSION; LAURA MURRELL,
MEMBER OF THE KY PUBLIC COMMISSION; AND RUSH DOZIER, MEMBER
OF THE KY PUBLIC SERVICE COMMISSION, Defendants-Appellees,
AIR PRODUCTS AND CHEMICALS, INC., ARMCO, INC., ET AL,
ATTORNEY GENERAL OF KENTUCKY, CONSUMER PROTECTION DIVISION,
CONCERNED CITIZENS OF MARTIN COUNTY, INC., JOHN HENRY WARD,
BERT DIAMOND AND SALLY CRUM, Intervenors-Appellees.
 85-5129
 United States Court of Appeals, Sixth Circuit.
 3/24/86
 
 AFFIRMED
 E.D.Ky.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY
 BEFORE: JONES and CONTIE, Circuit Judges; and DEMASCIO, District Judge.*
 Per Curiam.
 
 
 1
 This case raises the question whether it is proper for a federal court to dismiss on abstention grounds a challenge to a state public utility commission rate order brought by a utility alleging federal law claims, when the utility has simultaneously brought an attack on the same order raising the same claims in state court. The court below elected to dismiss citing both the Younger and Buford abstention doctrines. See Younger v. Harris, 401 U.S. 37 (1971), and Burford v. Sun Oil, 319 U.S. 315 (1943). We hold that Burford abstention is inappropriate in this circumstance but that Younger abstention is permissible and, accordingly, affirm.
 
 
 2
 * The primary controversy raised in the complaint involves the source from which an electric company will be permitted to purchase wholesale electricity and pass along the cost of that purchase to its customers through retail rates.[1] Plaintiffs-appellants are American Electric Power Company, Inc. ('AEP'), a multi-state holding company of electric power utilities, and its subsidiaries. Kentucky Power Company ('KPC'), one of AEP's subsidiaries, provides electricity to retail customers in Kentucky. KPC is party to an Interconnection Agreement among AEP affiliates. This agreement creates a pool of electricity and permits an Agreement member to draw from this pool when its own power needs exceed capacity. KPC had, for some time, been drawing heavily from this pool. According to KPC, it was therefore obliged by the Interconnection Agreement to find a new source of wholesale electricity. Consequently, in 1984, KPC entered into a second agreement (the 'Unit Power Agreement) with two AEP subsidiaries under which KPC was permitted to purchase 15% of the output from a new generating plant being built in Rockport, Indiana.
 
 
 3
 Since the Unit Power Agreement was interstate in nature it was submitted to the Federal Energy Regulatory Commission (FERC) which accepted it as a rate schedule. FERC is empowered by the Federal Power Act, 16 U.S.C. Sec. 791 et. seq. (1982), to determine the justness and reasonableness of interstate power transmission rates between utilities. The Unit Power Agreement was also submitted to the Kentucky Public Service Commission, the body which reviews Kentucky intrastate electric rates. The Kentucky Commission construed the Interconnection Agreement as permitting KPC to obtain all of its power needs from the pool without resort to the Unit Power Agreement. Since power under the new agreement would cost KPC more than three times that from the pool, the Kentucky Commission ruled that the purchases from the Unit Power Agreement would be imprudent and refused to approve the retail rate increase needed to pass on the higher costs.
 
 
 4
 In reviewing the fairness of intrastate retail rates, a state commission is bound to accept a FERC determination of the reasonableness of wholesale source rates. Narragansett Electric Co. v. Burke, 381 A.2d 1358 (R.I. 1977), cert. denied, 435 U.S. 972 (1978). AEP and KCP argue that by not approving the higher retail rates the Kentucky Commission has illegally displaced or ignored the FERC approved Unit Power Agreement in violation of the Federal Power Act and the Supremacy Clause. Further, they claim that the Kentucky Commission was not permitted to construe the Interconnection Agreement because the regulation of interstate transmission is preempted by the Federal Power Act and the agreement, therefore, is subject to the sole jurisdiction of FERC. These are the claims that AEP and KPC had raised in federal court. Shortly after filing this complaint, KPC brought an action in Kentucky state court in which it appealed the Kentucky Commission's order and raised the same issues presented here. That action is still pending. When the federal court below elected to abstain in favor of the state action and dismissed the case, the plaintiffs appealed.
 
 II
 
 5
 Abstention from the exercise of legitimate federal jurisdiction should be the exception, not the rule. Colorado River Water Conservation District v. United States, 424 U.S. 800, 813 (1976); Ada-Cascade Watch Co. v. Cascade Resource Recovery, Inc., 720 F.2d 897, 901 (6th Cir. 1983). 'Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.' Colorado River, 424 U.S. at 813 (quoting County of Allegheny v. Frank Mashuda Co., 360 U.S. 185, 188-189 (1959)). It is upon this background that we consider whether abstention was proper in this case. Our review of the trial court's decision to abstain is de novo. Traughber v. Beauchane, 760 F.2d 673, 676 (6th Cir. 1985).
 
 A.
 
 6
 AEP argues that the court's reliance on Burford abstention in dismissing this case was inappropriate. We agree. Abstention was called for in Burford v. Sun Oil, 319 U.S. 315 (1943), because the federal court had been asked to review the reasonableness of a Texas Railroad Commission order, a question of state law which implicated the state's ability to develop a comprehensive policy regarding the placement of oil wells. Id. at 320-22; Colorado River, 424 U.S. at 814-15. The need for consistent and informed decisions in this area was evidenced by the state's assignment of the review of these decisions to one state court. Burford, 315 U.S. at 325. Under these circumstances, review of the state law question by the federal court risked upsetting the delicate balance among oil producers that the state was attempting to establish in the harvesting of its oil deposits. See id. at 327.
 
 
 7
 Similarly, in Ada-Cascade, this court employed Burford abstention when it had been asked to determine 'whether [a proposed waste] facility had obtained all the necessary state and local permits' to continue construction, an issue which required the interpretation of state acts and rules established as part of a complex system of environmental regulation. 720 F.2d at 901, 905.
 
 
 8
 By contrast, the court here is not asked to review the validity under state law of the Kentucky Commission order. Nor is the court asked to decide local issues. Rather, AEP claims that the Commission is prohibited from making the order as a matter of federal law. Although we recognize the presence here of a regulatory scheme with consolidated state review, a decision on the grounds raised here will not present the same risk of disruption that was present in Burford.
 
 
 9
 The court below relied primarily upon the Fourth Circuit decision in Aluminum Co. of America v. Utilities Commission of North Carolina, 713 F.2d 1024 (4th Cir. 1983), where that court of appeals applied Burford to abstain from deciding Alcoa's claim that a commission order interfered with a preemptive federal regulatory scheme and burdened interestate commerce. Id. at 1025. Despite the similarity to this case, we decline to follow the Alcoa decision. The court there failed to recognize that Burford operates only to prevent federal determination of state law. Rather, the court abstained because the claim attacked a state order and the determination of the federal issues raised would cause 'needless obstruction of North Carolina's domestic policy.' Id. at 1029. This is an overly broad application of the doctrine. The Supreme Court has refused to employ Burford in a similar context nothing that 'there is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of state policy.' Zablocki v. Redhail, 434 U.S. 374, 379-80 n.5 (1978).
 
 
 10
 We hold that Burford abstention was improperly applied to this action where no questions of state law that implicate a complex state policy scheme are present.
 
 B.
 
 11
 The doctrine developed in Younger v. Harris, 401 U.S. 37 (1971), and its progeny espouses 'a strong federaly policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.' Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982). Abstention under Younger can be appropriate in civil cases where the state is a party as well as criminal cases when an ongoing state judicial proceeding implicates important state interests and provides an adequate opportunity to raise constitutional challenges. Id. at 432. When this is the case, the federal court should, absent bad faith, harassment or a patently invalid state statute, defer to certain state proceedings to consider the federal claims in the first instance. See Colorado River, 424 U.S. at 816.
 
 
 12
 There is little question here that the regulation of consumer electric rates is an important state interest or that KPC could raise its constitutional challenges to the Commission order in its state action. However, applying Younger here would be unusual in that the federal plaintiff is also, procedurally, a plaintiff in the pending state action. The typical Younger case involves a defendant to state initiated proceedings who prefers to raise his federal claims as a plaintiff in federal court than as a defense to the state court action. Crawley v. Hamilton County Commissioners, 744 F.2d 28, 30 (6th Cir. 1984). In Crawley state prisoners brought actions to challenge the conditions of their confinement in both state and federal court. This court refused to apply Younger abstention precisely because the federal plaintiffs were also the state plaintiffs. Id.
 
 
 13
 Formal denominations of plaintiff and defendant should not be applied mechanically, however. In Blue Cross & Blue Shield of Michigan v. Baerwaldt, 726 F.2d 296, 299 (6th Cir. 1984), this court abstained under Younger where an insurance company raised constitutional challenges to a rate order both by bringing an action in federal court and by seeking review of the order in state court. The posture of Blue Cross was significantly different than that in Crawley. The state proceedings in Crawley began with a state court complaint filed by the federal plaintiff. In Blue Cross, and in this case, the proceedings began at the regulatory level and the subsequent court action was no more than an appeal of a state order entered against the party who appeals. See Blue Cross, 726 F. 2d at 299. The process here was begun by the state in asserting its power to regulate intrastate commerce. When the regulatory activities of the state proceed to a state judicial forum, the principles of comity and federalism that underly the Younger doctrine come into play and the federal courts should abstain from interfering.
 
 
 14
 AEP does not deny that they will have an adequate opportunity to raise their federal claims in the pending state action, nor do they claim that the Kentucky Commission's orders are the result of bad faith or harassment. See Middlesex County, 457 U.S. at 437. Consequently we hold that the district court properly dismissed the complaint. The judgment of the court below is AFFIRMED.
 
 
 15
 CONTIE, Circuit Judge, concurring.
 
 
 16
 I concur in the result and in the reasoning of the Court except for the holding that the district court improperly relied on Burford abstention in dismissing this case. I would hold that Burford abstention applies.
 
 
 17
 In Burford v. Sun Oil Co., 319 U.S. 315 (1943), the Supreme Court held that a district court should have abstained when presented with a suit seeking review of the reasonableness under Texas state law of a state commission's permit to drill oil wells. Abstention was appropriate because 'review of reasonableness by the federal courts . . . where the State had established its own elaborate review system for dealing with the geological complexities of oil and gas fields, would have had an impermissibly disruptive effect on state policy for the management of those fields.' Colorado River Water Conservation District v. United States, 424 U.S. 800, 815 (1976). Accordingly, even though review of a state law question was at issue in Burford, the Court focused on the disruption of a state policy in applying abstention.
 
 
 18
 This Court addressed and applied Burford abstention in Ada-Cascade Watch Co. v. Cascade Resource Recovery, 720 F.2d 897 (6th Cir. 1983), where we found that the Supreme Court had established two factors which justify Burford abstention. 'First, the presence of a complex state regulatory scheme which would be disrupted by federal court review; and, secondly, the existence of a state-created forum with specialized competence in the particular area.' Id. at 903.
 
 
 19
 The district court below found that the considerations highlighted in Ada-Cascade existed in the present case. The Court initially observed that the first factor was satisfied since Kentucky 'has an overriding interest in regulating the retail rates charged by public utilities.' The court explained that the fixing of intrastate electricity rates by the Kentucky Commission undoubtedly involved fundamental state policy considerations. Also, the court noted that the rates are set by the Kentucky Commission 'in accordance with statutory procedures enacted for their formulation and execution.' The court further found that the second consideration was present since the orders of the Kentucky Commission are appealed to a 'designated state-created forum with special expertise in the public utility regulation field.' Exclusive judicial review is provided in the Franklin County Circuit Court by K.R.S. 278.410(1).[2] Finding the factors listed in Ada-Cascade to be present, the district court held that abstention under Burford was required.
 
 
 20
 The district court's holding is consistent with the Fourth Circuit decision in Aluminum Company of America v. Utilities Commission of North Carolina, 713 F.2d 1024 (4th Cir. 1983), a case which was relied upon by the district court. The appeal in Alcoa involved an action which had been brought in federal court by a utility company and its parent, seeking to enjoin the enforcement of a rate order issued by the state utilities commission which allegedly interfered with the FERC's regulatory scheme. State court proceedings involving, among other issues, the same federal claims raised in the federal action were pending at the time of appeal. The Fourth Circuit held:
 
 
 21
 We believe that the present case involves the quintessential Burford setting of a complex state regulatory scheme concerning important facts of state policies for which impartial and fair administrative determinations subject to expeditious and adequate judicial review are afforded. The usual rule of comity must govern; the district court properly exercised its discretionary power to withhold relief so as to avoid needless obstruction of [the state's] domestic policy.
 
 
 22
 Id. at 1029.
 
 
 23
 The present case is factually indistinguishable from Alcoa. I would accordingly follow that court's analysis in this case and find that the prosent appeal 'involves the quintessential Burford setting.' Also, the conditions stated in Ada-Cascade are met in this case. First, there is a complex state regulatory scheme involving important state policies and second, Kentucky has provided a specialized forum to review challenges such as the one presented on appeal. Based on this court's prior discussion of Burford abstention and the holding of the Alcoa case, I would affirm the district court's application of Burford abstention.
 
 
 24
 DeMASCIO, District Judge, concurring.
 
 
 25
 While I agree that the district court properly dismissed plaintiff's complaint, I reach that conclusion for the opposite reasons suggested in the per curiam opinion. I am convinced that the proper basis for abstention is Burford v. Sun Oil Co., 319 U.S. 315 (1943), and not Younger v. Harris, 401 U.S. 37 (1971).
 
 
 26
 In Crawley v. Hamilton County Commissioner, 744 F.2d 28 (6th Cir. 1984), this court circumscribed the application of the Younger doctrine. There, the district court dismissed, on Younger grounds, a Sec. 1983 action brought by a group of jail inmates challenging the conditions of their confinement. The plaintiffs were contemporaneously pursuing a state court action on the same grounds. The circuit court reversed, holding the Younger doctrine inapplicable in this procedural context:
 
 
 27
 Younger and its progeny all have a procedural posture which is very different from our case. In the typical Younger case, the federal plaintiff is a defendant in ongoing or threatened state court proceedings seeking to enjoin continuation of those state proceedings. Moreover, the basis for the federal relief claimed is generally available to the would-be federal plaintiff as a defense in the state proceedings. In our case, the federal plaintiffs are also plaintiffs in the state court action. In addition, the plaintiffs are not attempting to use the federal courts to shield them from state court enforcement efforts. Accordingly, there is no basis for Younger abstention in this case.
 
 
 28
 Id. at 30 (citations omitted).
 
 
 29
 Noting that the Kentucky Power Company appealed the Kentucky Public Service Commission's December 4, 1984 order in state court, the lower court held that the Younger doctrine, made applicable to civil actions by virtue of Middlesex County Ethics Committee v. Garden State Bar Ass'n., 457 U.S. 423 (1982), made federal abstention proper. I disagree. The procedural posture of this case does not fit the Younger mold. Appellants are not attempting to enjoin state court proceedings against them, but rather they are state court plaintiffs. Further, appellants are not defensively asserting federal claims in the state court action. Therefore, the district court should not have abstained on the basis of the Younger doctrine and the per curiam opinion improperly affirms on that basis.
 
 
 30
 But, under the Burford doctrine, abstention is appropriate where federal review of a state law question would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern. See Ada-Cascade Watch Co. v. Cascade Resource Recovery, 720 F.2d 897, 903 (6th Cir. 1983).
 
 
 31
 The prerequisites for the application of Burford are: (a) the presence of a complex state regulatory scheme that would be disrupted by federal court review and (b) the existence of a state-created forum with specialized competence in the particular area. In Alcoa v. Utilities Comm'n of N. Carolina, 713 F.2d 1024 (4th Cir. 1983), the Fourth Circuit, faced with similar facts, concluded that Burford abstention was appropriate. The court held that the state commission's ratemaking 'involved important and basic consideration of state policy and was accomplished in accordance with the uniform statutory procedures for the formation of that policy.' Id. at 1029.
 
 
 32
 In holding the Burford abstention appropriate, the district court stated:
 
 
 33
 The Commonwealth of Kentucky clearly has an overriding interest in regulating the retail rates charged by public utilities. The Kentucky Public Service Commission orders outline the retail, intrastate rates to be charged to Kentucky electric power consumers. The setting of these rates undoubtedly involve fundamental state policy considerations and are accomplished in accordance with statutory procedures enacted for their formulation and execution. These orders are being appealed by Kentucky Power Company to a designated state-created forum with special expertise in the public utility regulation field; to wit, the Frankling County Circuit Court. Kentucky Power Company has raised both state and federal legal issues in that forum. These federal issues are the same ones the American Flectric Power Co. affiliates wish this court to consider.
 
 
 34
 I agree that abstention on Burford grounds is appropriate in this case. The State of Kentucky certainly has a legitimate interest in the regulation of the retail rates of its public utilities. In order to effectively protect that interest the state regulatory commission has the power to scrutinize expenditures and costs that have been imprudently incurred by a utility when other less expensive means are available for the same purpose. Moreover, an extensive state appellate system exists whereby utilities can seek review of the commission's orders. Not only does such a system exist, but appellants are taking advantage of that system while, at the same time, pursuing this action.
 
 
 35
 The district court's ruling should be affirmed because abstention based on Burford was proper.
 
 
 
 *
 Honorable Robert E. DeMascio, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 AEP raised an addition claim in its complaint which involves reimbursements from AEP subsidiaries to KPC for the cost of construction and maintenance of a extra-high voltage line. The substance of this claim is unclear from the record and, regardless, its discussion would add nothing to the resolution of the issues on appeal
 
 
 [2]
 The statute provides in pertinent part:
 Any party to a commission proceeding or any utility affected by an order of the Commission may, within twenty (20) days after being served with the order, or within twenty (20) days after its application for rehearing has been denied by failure of the Commission to act, or within twenty (20) days after being served with the final order on rehearing, when a rehearing has been granted, bring an action against the Commission in the Franklin Circuit Court to vacate or set aside the order or determination on the ground that it is unlawful or unreasonable. Notice of the institution of such action shall be given to all parties of record before the Commission.
 K.R.S. 278.410(1) (1981).